**KESSLER TOPAZ MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:   (415) 400-3000
Fax:   (415) 400-3001

*Counsel for Plaintiff Victor W. Mangino*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VICTOR W. MANGINO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LUCID GROUP, INC., PETER RAWLINSON, and SHERRY HOUSE, <br><br> Defendants. | Case No. 3:22-cv-02094 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:22-cv-02094

Plaintiff Victor W. Mangino ("Plaintiff"), by and through his counsel, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Lucid Group, Inc. ("Lucid" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I. **NATURE OF THE ACTION AND OVERVIEW**

1. This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Lucid common stock between November 15, 2021, and February 28, 2022, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2. Lucid, a Delaware corporation with principal executive offices in Newark, California, designs, engineers, builds, and sells luxury electric vehicles ("EVs"). Specifically, Lucid currently sells an electric sedan, the Lucid Air, and plans to launch an electric SUV, the Lucid Gravity. Lucid's common stock trades on the NASDAQ under the ticker symbol "LCID."

3. On February 22, 2021, prior to the commercial launch of the Lucid Air, Lucid announced its plans to merge with Churchill Capital Corp. IV ("Churchill"), a special purpose acquisition company, in a transaction that would allow Lucid securities to be publicly traded and would provide Lucid with $4.4 billion in capital (the "Merger").

4. As Lucid transitioned into a publicly traded company, Defendants assured investors that Lucid would produce 577 EVs in 2021, 20,000 EVs in 2022, and 49,000 EVs in 2023 (including 12,000 of the Project Gravity SUV, which would launch that year).

5. Throughout the Class Period, Defendants repeatedly assured investors that Lucid's production capacity was rapidly increasing and that Lucid would reach its production targets.

6. Defendants' assurances proved to be false. On February 28, 2022, the Company admitted that it: (1) had only delivered approximately 125 EVs in 2021 and still had only produced approximately 400 EVs by February 28, 2022; (2) would only produce between 12,000 and 14,000 EVs in 2022; and (3) would delay the launch of the Lucid Gravity until 2024. Defendant Rawlinson attributed the slashed production outlook to "the extraordinary supply chain and logistics challenges [Lucid] encountered."

7. On this news, the price of Lucid common stock fell $3.99 per share, or more than 13%, from a close of $28.98 per share on February 28, 2022, to close at $24.99 per share on March 1, 2022.

8. This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants overstated Lucid's production capabilities while concealing that "extraordinary supply chain and logistics challenges" were hampering the Company's operations from the start of the Class Period.

9. As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock, Plaintiff and other members of the Class have suffered significant damages.

## II. JURISDICTION AND VENUE

10. Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, promulgated thereunder (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this District under Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1391(b), because Lucid's principal executive offices are in Newark, California, and because many of the acts and conduct that constitute the violations of law complained

of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

13. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

**III.    PARTIES**

14. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Lucid common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

15. Defendant Lucid is a Delaware corporation headquartered at 7373 Gateway Boulevard, Newark, California 94560.

16. Defendant Peter Rawlinson ("Rawlinson") has served as the Company's Chief Executive Officer and Chief Technology Officer throughout the Class Period.

17. Defendant Sherry House ("House") has served as the Company's Chief Financial Officer throughout the Class Period.

18. Defendants Rawlinson and House are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Lucid's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

20. Lucid and the Individual Defendants are collectively referred to herein as "Defendants."

IV. **SUBSTANTIVE ALLEGATIONS**

A. **Background**

21. Lucid, a Delaware corporation with principal executive offices in Newark, California, designs, engineers, builds, and sells luxury EVs. Lucid currently sells an electric sedan, the Lucid Air, and plans to launch an electric SUV, the Lucid Gravity.

22. On February 22, 2021, Lucid issued a press release announcing its plans to merge with Churchill to bring the Company public and provide Lucid a $4.4 billion capital infusion.

23. The Merger closed on July 23, 2021, and Lucid's common stock began trading on the NASDAQ on July 26, 2021, under the ticker symbol "LCID."

24. Defendants took a number of steps to increase interest in Lucid as it transitioned into a publicly traded company, including projecting that the Company would produce 577 EVs in 2021, 20,000 EVs in 2022, and 49,000 EVs in 2023 (including 12,000 of the Gravity SUV, which would launch that year).

B. **Defendants' False and Misleading Statements**

25. The Class Period begins on November 15, 2021, to coincide with the Company's first quarterly results following the commercial launch of the Lucid Air on September 28, 2021. In the Company's press release announcing these results, Defendants touted Lucid's growth potential, stating that Lucid "[c]ontinued to invest in the business, readying production and deliveries." In the same press release, Defendant Rawlinson further explained that the Company "successfully began production of vehicles for customer deliveries, continued investing in capacity expansion of our manufacturing facility in Arizona, and opened new retail and service locations in advance of the Lucid Air launch." Moreover, Defendant Rawlinson confirmed that the Company "remain[s] confident in our ability to achieve 20,000 units in 2022." The press release also touted "the expansion of [Lucid's] manufacturing capacity" which was "expected to provide production capacity for up to 90,000 vehicles per year by the end of 2023, by expanding Lucid Air." Defendant House assured investors

that "[m]oving forward, we anticipate continuing vehicle deliveries to customers, investing in capacity and capabilities, and providing value to all of our stakeholders."

26.     In the Company's Form 10-Q filed with the SEC on November 15, 2021, and signed by Defendant House, Defendants stated that the Company "continues to expand the Arizona plant and build-out of a network of retail sales and service locations," and explained that the Arizona plant "is designed with an initial output capacity to produce up to 34,000 vehicles annually." The Company further stated that it expected "to begin production of Project Gravity at the end of 2023."

27.     In addition to touting the Company's production capabilities, Defendants also assured investors that supply chain issues, which were plaguing other auto manufacturers, would not interfere with the Company's ability to reach its production targets. For example, during the Company's quarterly conference call with investors on November 15, 2021, Defendant Rawlinson explained:

> We're optimistic about these goals even in a challenging environment as COVID-19 continues to present numerous obstacles for the auto industry and supply chain. Lucid is no stranger to this, but we have continued to deliver against our timeline and with the highest standard of quality. And I would like to commend the [C]ompany's employees who work relentlessly and tirelessly to help Lucid's progress and grow[th] during these recent periods of uncertainty.

28.     During the same call, Defendant Rawlinson stated that Lucid's upcoming expansion of its Arizona factory would "allow for a significant increase in production capacity for Lucid Air and enable the production of the Gravity SUV in 2023."

29.     On December 3, 2021, Lucid received a subpoena from the SEC. According to the Company's Form 8-K filed with the SEC on December 6, 2021, the subpoena "request[ed] the production of certain documents related to an investigation" that "appears to concern the business combination between [Churchill and Lucid] and certain projections and statements."

30.     Defendants continued to represent that the Company was rapidly increasing its production capacity, that the planned deliveries of the Lucid Air were underway, and that the Company would begin producing the Gravity SUV in 2023. For example, in a prospectus supplement filed with the SEC on December 9, 2021, updating the Company's August 24, 2021 prospectus to

reflect the effects of the reverse recapitalization that occurred in connection with the Merger, Defendants touted the Company's production capacity, stating that "[e]xpansion activities are already underway to bring capacity at our Arizona site to 90,000 vehicles per year by 2023 for production of both the Lucid Air and Lucid Gravity."

31. In the prospectus supplement, Defendants explained that "[i]n late October 2021, reservation holders of Lucid Air Dream Edition models began receiving their vehicles, with customer deliveries ramping up thereafter." Defendants also reiterated that the Company "expect[s] to begin production of Project Gravity at the end of 2023."

32. The above statements identified in paragraphs 25-31 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants overstated Lucid's production capabilities while concealing that "extraordinary supply chain and logistics challenges" were already significantly hampering the Company's operations.

**C.    The Truth Emerges**

33. Investors learned the truth about Lucid's production capabilities on February 28, 2022. On that day, Lucid issued a press release admitting that it had only delivered approximately 125 vehicles in 2021, still had only produced approximately 400 EVs by February 28, 2022 (falling short of its 577-vehicle target for 2021), and would only produce between 12,000 and 14,000 vehicles in 2022 (falling short of its 20,000-vehicle target). During the Company's quarterly earnings call the same day, Defendant Rawlinson also admitted that the Company would need to delay the launch of the Lucid Gravity until 2024 (versus a prior launch date in 2023).

34. In the February 28, 2022 press release, Defendant Rawlinson attributed Lucid's slashed production outlook to "the extraordinary supply chain and logistics challenges [Lucid] encountered." Defendant Rawlinson likewise admitted during the quarterly call that Lucid's "production has been and indeed continues to be impacted by supply chain challenges" and that, "[i]n some cases, the pandemic meant that our teams could not visit our suppliers in person to ensure alignment on engineering specifications and tooling." Defendant House similarly acknowledged that

the supply chain challenges would have a continuing impact, explaining that "[w]e expect to remain supply chain constrained in . . . the coming months."

35. Defendant Rawlinson also tried to justify the missed targets on the basis that the Company had "chosen quality over volume. . . . we prioritize quality over numbers."

36. On this news, the price of Lucid common stock fell $3.99 per share, or more than 13%, from a close of $28.98 per share on February 28, 2022, to a close at $24.99 per share on March 1, 2022.

## V. PLAINTIFF'S CLASS ACTION ALLEGATIONS

37. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased or otherwise acquired Lucid common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of Lucid, and their families and affiliates.

38. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

39. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether Defendants violated the Exchange Act;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

    e. Whether the price of Lucid common stock was artificially inflated; and

    f.  The extent of damage sustained by members of the Class and the appropriate measure of damages.

40. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

41. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests that conflict with those of the Class.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI. APPLICABILITY OF THE FRAUD ON THE MARKET DOCTRINE

43. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

  a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

  b. The omissions and misrepresentations were material;

  c. The Company's common stock traded in an efficient market;

  d. The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

  e. Plaintiff and the Class purchased Lucid common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

44. At all relevant times, the market for the Company's common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire

services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII. NO SAFE HARBOR

45. Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

46. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII. LOSS CAUSATION/ECONOMIC LOSS

47. Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. The price of Company common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Lucid common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX. ADDITIONAL SCIENTER ALLEGATIONS

48. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of

business that operated as a fraud or deceit on purchasers of Company common stock during the Class Period.

X. **CLAIMS AGAINST DEFENDANTS**

**COUNT I**

**Violation of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

49. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Company common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

51. Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

53. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

54. The Individual Defendants acted as controlling persons of Lucid within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate

knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

56. As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Company common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b. Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

        d.    Such other and further relief as the Court may deem just and proper.

**XI.**    **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: April 1, 2022                      Respectfully submitted,

**KESSLER TOPAZ MELTZER
  & CHECK, LLP**

*/s/ Jennifer L. Joost*
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:   (415) 400-3000
Fax:  (415) 400-3001

        -and-

NAUMON A. AMJED
(namjed@ktmc.com)
DARREN J. CHECK
(dcheck@ktmc.com)
RYAN T. DEGNAN
(rdegnan@ktmc.com)
BARBARA A. SCHWARTZ
(bschwartz@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel:   (610) 667-7706
Fax:  (610) 667-7056

*Counsel for Plaintiff Victor W. Mangino*