Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com

Brian M. Burnovski
Daniel J. Schwartz
Chui-Lai Cheung
  (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: brian.burnovski@davispolk.com
        daniel.schwartz@davispolk.com
        chui-lai.cheung@davispolk.com

*Attorneys for Defendants Lucid Group, Inc.,
Peter Rawlinson, and Sherry House*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE LUCID GROUP, INC. SECURITIES LITIGATION | Case No. 3:22-cv-02094-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date:   August 17, 2023<br>Time:   2:00 p.m.<br>Dep't.: Courtroom 10<br>Judge:  Honorable Araceli Martínez-Olguín |

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................... ii

TABLE OF DEFINITIONS.................................................................................................... iv

NOTE ON CITATION FORMATS .........................................................................................v

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ..........................................................................................................................3

I.      THE CC DOES NOT PLEAD ACTIONABLE MISSTATEMENTS OR OMISSIONS .......3

        A.      Plaintiffs Do Not Allege Any False or Misleading Statement....................................3

        B.      Projected Vehicle Targets and Statements About Lucid's Ability to Achieve
                Those Targets Are Nonactionable Forward-Looking Statements. ..............................7

        C.      The Challenged Statements Are Nonactionable Opinions...........................................8

        D.      Statements of General Optimism About Performance Are Puffery.............................9

II.     PLAINTIFFS FAIL TO PLEAD SCIENTER ....................................................................10

        A.      Plaintiffs' FE Allegations Do Not Give Rise to a Strong Inference of Scienter........10

        B.      Plaintiffs' Additional Scienter Allegations Fail as a Matter of Law. ........................11

III.    PLAINTIFFS' SECTION 20(a) CLAIM ALSO FAILS .......................................................12

CONCLUSION.......................................................................................................................12

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS - LEAD CASE NO. 3:22-CV-02094-AMO

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ........................................................................................ 3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ....................................................................................... 9

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ..................................................................................... 8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ............................................................................... *passim*

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ..................................................................................... 6

*Mulligan v. Impax Lab'ys, Inc*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) .......................................................................... 11

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ........................................................................................ 5

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ................................................................................ 6, 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ................................................................................................. 3, 8

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ........................................................................ 5, 7, 8, 9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) .................. 8

*Prodanova v. H.C. Wainwright & Co.*,
  993 F.3d 1097 (9th Cir. 2021) ................................................................................... 11

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..................................................................................... 9

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .......................................................................................v

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ............................................................................. 4, 5, 12

*Rodriguez v. Kwok*,
  2014 WL 889570 (N.D. Cal. Mar. 3, 2014) .......................................................... 10

ii

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .......................................................................................... 3, 9, 11

*In re Volkswagen "Clean Diesel" Mktg., Sales, Pracs. & Prods. Liab. Litig.*,
  2017 WL 6041723 (N.D. Cal. Dec. 6, 2017) ............................................................................ 12

*Warshaw v. Xoma Corp.*,
  74 F.3d 955 (9th Cir. 1996) ............................................................................................... 9

*Webb v. Solar City Corp.*,
  884 F.3d 844 (9th Cir. 2018) .......................................................................................... 12

*Weston Fam. P'Ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ...................................................................................... 3, 4, 5

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .................................................................................. 2, 4, 11

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) .................................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...................................................................................... 6, 12

<u>STATUTES & RULES</u>

Fed. R. Civ. P. 8(a) .......................................................................................................... 3

Fed. R. Civ. P. 9(b) ................................................................................................... 1, 3, 11

17 C.F.R. § 240.10b-5 ....................................................................................................... 4

15 U.S.C. § 78j(b) ........................................................................................................3, 4, 12

15 U.S.C. § 78t(a) ..........................................................................................................3, 12

<u>OTHER AUTHORITIES</u>

6A Sec. Reg. Forms § 4:40 (May 2023) ...............................................................................7

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS - LEAD CASE NO. 3:22-CV-02094-AMO

## TABLE OF DEFINITIONS

Capitalized terms used in this reply have the meanings set forth below.

| TERM | DEFINITION |
|---|---|
| Appendix | Appendix to Defendants' Motion, attached as Ex. 15 (Dkt. No. 83-16) to the Declaration of Neal A. Potischman (Dkt. No. 83-1) |
| CC | Consolidated Complaint for Violations of the Federal Securities Laws (Dkt. No. 78) |
| Class Period | The putative class period between November 15, 2021 and August 3, 2022 |
| CW | Confidential Witness |
| Defendants | Lucid, Peter Rawlinson, and Sherry House |
| EV | Electric Vehicle |
| FE | Former Employee |
| FRCP | Federal Rules of Civil Procedure |
| Lucid | Lucid Group, Inc. and the Company's subsidiary Atieva, Inc., which previously did business under the name Lucid Motors |
| Motion or MTD | Defendants' Notice of Motion and Motion to Dismiss the Consolidated Complaint; Memorandum of Points and Authorities in Support Thereof (Dkt. No. 83) |
| Opposition or Opp. | Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Consolidated Complaint (Dkt. No. 88) |
| PSLRA | Private Securities Litigation Reform Act |
| Plaintiffs | Lead Plaintiff Sjunde AP-Fonden and, as the context may require, any member of the putative class |
| Rule 10b-5 | Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 |
| RSU | Restricted Stock Unit |
| Section 10(b) | Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) |
| Section 20(a) | Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) |
| SPAC | Special Purpose Acquisition Company |

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS - LEAD CASE NO. 3:22-CV-02094-AMO

## NOTE ON CITATION FORMATS

As in Defendants' Motion, unless otherwise stated herein, all emphases and ellipses in citations used herein have been added, and all quotations, internal quotation marks, and citations have been omitted.

Commonly used citations in this brief take the following form:

| CITATION | DESCRIPTION |
| --- | --- |
| ¶ [●][1] | Paragraph in CC |
| #[●] | Numbered alleged misstatement set forth in (i) Exhibit B to CC (Dkt. No. 78-2) and (ii) the Appendix |
| Ex. [●] | Exhibit to the Declaration of Neal A. Potischman |
| MTD [●] | Page citation to Defendants' Motion |
| Opp. [●] | Page citation to the Opposition |

---

[1] As set forth in the Motion (MTD 2 n.1), the CC's well-pled factual allegations are presumed true solely for purposes of this Motion, while conclusory allegations, legal conclusions, and allegations contradicted by documents appended to or incorporated by reference in the CC or subject to judicial notice are not presumed true. *See, e.g.*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

**PRELIMINARY STATEMENT**

In November 2021, Lucid, a new-to-market EV maker, did what manufacturing companies do as a matter of course—it publicly disclosed its then-best estimate of the number of cars it expected to produce by the end of the next year.  Lucid qualified that projection with explicit risk warnings, making clear that it could achieve the target only if it could overcome existing challenges, including supplier delays, and timely build out its still-nascent production processes and inventory management and logistics systems.  When it became apparent, due to global supply chain and internal logistics issues, that Lucid would not achieve its projections, it appropriately disclosed that and reduced the production target.  Plaintiffs' claim that this amounts to securities fraud entirely ignores the substance of what Lucid actually told investors, and instead amounts to far-fetched and illogical conjecture.  Their claims are meritless and should be dismissed.

Defendants' Motion demonstrated that the CC does not allege particularized facts plausibly supporting the conclusion that Defendants made actionable misstatements or omissions about (i) the number of EVs Lucid would make in 2022, (ii) the cause of Lucid's revisions to its production targets, or (iii) its factory capacity—much less supporting a strong inference of scienter.  Plaintiffs' Opposition fails to refute Defendants' arguments.  Plaintiffs all but ignore the heightened pleading requirements governing their claims under the PSLRA and FRCP 9(b), and instead throw up a smokescreen of inapplicable legal standards, inapposite case law, and conclusory assertions.

To begin, the Opposition doubles down on trying to plead falsity and scienter as to statements about production targets and capacity through allegations from anonymous mid- and lower-level former employees with limited roles in Lucid's factory and warehouse.  Plaintiffs do not dispute that the FEs had no role in projecting or tracking Lucid's progress towards its production goals, and almost none of them ever interacted with the individual defendants (Mr. Rawlinson and Ms. House); thus, they cannot speak to what Defendants knew or believed when they announced and later revised the EV targets.  This is so even as to the outlier assertion—sourced exclusively to FE-2 ***and uncorroborated by anyone else***—that Mr. Rawlinson purportedly told certain employees before the Class Period not to "kill themselves to meet targets" because Lucid would miss year-end production guidance for 2022 and 2023 anyway, more than a year (or

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS - LEAD CASE NO. 3:22-CV-02094-AMO

two) later.  Notwithstanding that this singular allegation forms the lynchpin of Plaintiffs' case (at least as to the targets), the Opposition fatally fails to address Defendants' arguments about why it cannot be credited under controlling law.  Among other failings, Plaintiffs offer no explanation as to how Mr. Rawlinson allegedly could have known in October or November 2021 that Lucid would not meet its production forecast for year-end 2022, or why he would have said any such thing when it directly conflicts with what the CC elsewhere alleges were his own and Lucid's key priorities.

Nor do Plaintiffs demonstrate falsity or scienter as to Lucid's explanations for its production delays.  The FEs' allegations do not plausibly contradict or otherwise render misleading Defendants' public statements on this subject—which explicitly warned, in *every* quarter during the Class Period, that, as a new EV manufacturer, Lucid had faced, currently faced, and would continue to face supply chain, logistics, and warehouse management challenges, and that it could achieve its production goals only if internal "mitigation plans" were successful.  The FEs assert that in scaling production, Lucid allegedly experienced some delays (as new manufacturers often face) due to part-design flaws and difficulties tracking inventory and with timely part delivery, and that initial mitigation efforts were unsuccessful.  But even if true, these allegations are entirely consistent with Lucid's public statements about its ability to meet production targets and the reasons for delays, which therefore were neither false nor misleading.  The Opposition simply ignores Lucid's actual disclosures, or incorrectly chalks them up as generic and "hypothetical"—disregarding the Ninth Circuit's holding in *Wochos v. Tesla, Inc.*, which sustained the sufficiency of virtually identical disclosures as a matter of law against similar claims of fraud.  Plaintiffs' attempt to maintain the artificial distinction between (a) global supply chain issues (which Plaintiffs concede were disclosed) and (b) internal logistics issues (which they counterfactually contend were concealed) is likewise at odds with *Wochos* and other Ninth Circuit authority, which make clear that Plaintiffs are not entitled to their preferred interpretation of Defendants' statements, even at the pleading stage.

At bottom, nothing in the Opposition alters the conclusion that the CC should be dismissed on the independent bases set forth in the Motion.  First, the 30 challenged statements at issue are not actionable as a matter of law—both for the reasons set forth above, and also because they are forward-looking statements protected by the PSLRA's safe harbor, statements of opinion not

2

adequately alleged to have been false under *Omnicare*, and/or immaterial "puffery." And second, Plaintiffs fail to plead particularized facts supporting a strong inference of scienter because the FE allegations—whether considered alone or together with Plaintiffs' supplementary motive and opportunity pleading—are insufficient as a matter of law. Finally, because Plaintiffs do not plead a primary violation under Section 10(b), their Section 20(a) control person claim necessarily fails.

**ARGUMENT**

**I.   THE CC DOES NOT PLEAD ACTIONABLE MISSTATEMENTS OR OMISSIONS**

**A.   Plaintiffs Do Not Allege Any False or Misleading Statement.**

The CC does not allege particularized facts plausibly showing that any of the 30 statements at issue—which concern (i) Lucid's 2022 production targets, (ii) the reasons for production delays, and (iii) its factory capacity—are false or misleading.[2] MTD 7-11; Ex. 15.

***EV Targets and Reasons for Delay***. Regarding the first two issues, Plaintiffs rely heavily on FE allegations that Lucid faced parts shortages and had no reliable inventory system (Opp. 7-8), but such allegations do not plausibly show that the challenged statements "directly contradict[ed] what the defendant[s] knew at the time or omit[ted] material information," *Weston Fam. P'Ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022); *accord Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001). To the contrary, Defendants disclosed throughout the alleged Class Period that Lucid was actually experiencing delays due to supply chain and logistics issues, and that its ability to meet the targets depended on overcoming those issues as it ramped up production. MTD 3-5.[3]

Plaintiffs argue that Defendants "cannot rely on language 'describing hypothetical risks to

---

[2] Plaintiffs repeatedly misstate the applicable pleading standards. It is not sufficient, as they assert (Opp. 6), that their claims be facially plausible under FRCP 8(a) because the falsity and scienter elements of a Section 10(b) claim also require heightened particularity under FRCP 9(b) and the PSLRA (*see* MTD 7). Plaintiffs are also wrong that courts cannot dismiss a Section 10(b) claim for lack of falsity unless the adequacy of a disclosure "is so obvious that reasonable minds could not differ" (Opp. 6-7); that is the standard for materiality, *see, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 700 (9th Cir. 2021)—not falsity or scienter under the PSLRA.

[3] Plaintiffs cannot distinguish *Ronconi*, *Weston*, and other cases as turning on less specific allegations than those here. *See* Opp. 7 n.3, 10 n.6, 11 n.7. In *Ronconi*, for example, dismissal turned, just as here, on the fact that the complaint alleged facts from which "a pessimistic argument could have been made" that the company would not achieve its goals, which did not support an "inference that defendants actually knew their forward looking statements to investors were false or misleading when made." 253 F.3d at 430.

3

avoid liability for the failure to disclose that the company already had information suggesting' it would miss projections." Opp. 7. But that ignores Defendants' actual disclosures, which did more than describe "hypothetical" risks and made clear that, as a new manufacturer, Lucid was currently working to overcome both external and internal supply chain and logistics challenges. For example, Lucid disclosed in securities filings from the start of the Class Period that it had already "encountered *and expect[s] to continue to encounter*" risks related to its "*manufacturing capabilities*," that its ability to "commercially manufacture and sell the Lucid Air *is dependent upon*" its ability to timely and effectively execute its parts procurement and manufacturing plans, that it was still in the process of "*finalizing*" its "*component procurement*" and "*manufacturing plans*," and that "volume production . . . will *necessitate continued development, maintenance and improvement*" of its systems, including "*procurement [and] inventory management*." Ex. 1 at 50-51, 58, 66; *see also* MTD 3-5; Exs. 2-4. Defendants also repeatedly warned in press releases and earnings calls that Lucid's production targets were based on its "mitigation plans" and were achievable only if "supply chain logistics disruptions aren't material and [the] mitigation plans are effective," which would "take a few months" to determine. ¶¶ 332, 383, 404; Ex. 10 at 11. These are disclosures of *present* challenges that had to be surmounted to achieve Lucid's targets—as the Ninth Circuit recently held in *Wochos*, a case involving nearly identical allegations as to the achievability of an EV maker's production targets. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 n.3, 1195-96 (9th Cir. 2021) (near-identical risk disclosures were sufficiently "detailed and specific" and were not misleading because they "contain no explicit or implicit representation that [EV maker] had *not* already experienced such issues"). Section 10(b) and Rule 10b-5 simply do not impose any affirmative duty to provide additional details. *See, e.g.*, *Weston*, 29 F.4th at 620; *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012).

Specifically as to Lucid's explanations for the production delays, Plaintiffs assert that the Court may not determine at the pleading stage whether Lucid's disclosure of "logistics challenges" adequately revealed internal logistics issues, as opposed to global ones. Opp. 8-9. Not so. *See Wochos*, 985 F.3d at 1193 (rejecting, under PSLRA, plaintiffs' argument that they were entitled to inference on motion to dismiss that disclosure about "manufacturing equipment" meant "automated

4

manufacturing equipment"). Under the PSLRA, it is ***Plaintiffs'*** burden to sufficiently allege particularized facts plausibly demonstrating falsity, and courts can and must assess the context and "clear import" of what was said in determining whether this standard has been satisfied. *Rigel*, 697 F.3d at 880; *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (dismissing claim where challenged statement did not give "impression that [company's] growth was different than it was in reality"); *Weston*, 29 F.4th at 619. Plaintiffs' allegations here do not suffice because they amount, at most, to baseless assertions that Defendants could have disclosed negative developments sooner or in greater detail, neither of which is actionable. *See Weston*, 29 F.4th at 619-20.

Plaintiffs rely heavily on the Ninth Circuit's recent decision in *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.* ("*Forescout*"), 63 F.4th 747 (9th Cir. 2023), but that case is readily distinguishable. There, defendants allegedly misrepresented that Forescout was expecting deferred revenues from delayed "binding deals" with customers, despite knowing that these deals were "illusory." *Id.* at 756, 768. It was thus misleading to blame Forescout's subsequent revenue miss "entirely" on foreign market conditions because "the misclassification of illusory deals" was plausibly alleged to be a "significant cause" of the shortfall. *Id.* at 770. Here, however, Defendants made clear that Lucid's ability to achieve production targets turned on multiple factors, including the scope and duration of ***both*** global and Lucid-specific supply chain and logistics challenges, and whether Lucid's specific mitigation plans would, over time, prove sufficient. MTD 3-5, 7-11. Unlike in *Forescout*, moreover, Plaintiffs here did not allege that internal logistics issues and delays had any distinct impact on Lucid's ability to achieve its targets (MTD 10)—a point the Opposition fails to address. *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 836 (9th Cir. 2022) (data not misleading where not specifically alleged what "results would have been without outlier data").

Nor does *Forescout* support Plaintiffs' attempt to plead the falsity of Lucid's statements about its production targets and the reasons for delays through allegations attributed to lower-level FEs in Lucid's warehouse and plant. Opp. 18. The claims in *Forescout* were based on statements from 20 confidential witnesses in different parts of the company that mutually corroborated each other, including, critically, a "senior" executive who "dealt with the company on a 'global' level"

5

and had knowledge about company-wide trends. *Forescout*, 63 F.4th at 771-72. Here, by contrast, Plaintiffs cite half as many FEs, all with similar, lower-level positions, none of whom had any company-wide knowledge of or involvement in setting or tracking Lucid's production targets (MTD 16)—a point the Opposition fails to contest.

Most fundamentally, the FE allegations pertaining to logistics issues at Lucid's warehouse and plant do nothing to suggest that Defendants knew when they made their statements that Lucid's efforts to mitigate the issues would fail or that Lucid would miss its production targets in the future. *See* MTD 15-19. Indeed, Plaintiffs' case as to the allegedly misleading production targets hinges almost entirely on FE-2's uncorroborated and singular allegation that Mr. Rawlinson supposedly said before the Class Period (at some point in October or November 2021) that Lucid would miss its 2022 target of 20,000 vehicles. That assertion, however, is negated by other allegations in the CC, which render it too contradictory and implausible to be credited. *Id.* 17-19. The Opposition wholly fails to address this argument—offering no explanation as to (i) how Mr. Rawlinson could have determined, just after production began, that Lucid would miss its year-end target 13 months later (let alone for 2023), (ii) why he would have told employees not to even *try* to hit the targets when, as the CC alleges, meeting production targets was Lucid's top priority, (iii) why, if Lucid management knew by November 2021 that inventory and warehouse issues were preventing it from meeting its goals, they delayed taking further steps to remediate those issues for two months (which the CC concedes were implemented by January 2022), or (iv) why Lucid reduced its production target in February 2022 to 12-14,000 vehicles—a number, according to the CC, Lucid purportedly knew it could *not* achieve—rather than (as it later did) to a slightly lower target of under 10,000 vehicles, which, according to the CC, Lucid knew *was* achievable. MTD 18-19. FE-2's assertions are "simply incongruous with [Defendants'] public actions alleged in the complaint," and thus should be rejected. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 999 (9th Cir. 2009); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 (9th Cir. 2014). Plaintiffs' only response—that FE-2's allegations should be credited because the CC alleges, based solely on FE-2's *own* statements, that Mr. Rawlinson purportedly admitted that Lucid would not meet its targets (Opp. 19)—is fatally

6

circular and insufficient to plead even a plausible claim. *See, e.g.*, *Forescout*, 63 F.4th at 767 (even at pleading stage, courts must scrutinize CW allegations, including "plausibility" and "reliability").

*Capacity*. Finally, as to statements about production capacity (##4, 6-7), Plaintiffs do not dispute—and thus concede—that it was "literally accurate" that Lucid had "a factory scale[d] for 34,000 units a year." *See* Opp. 11. Plaintiffs assert that these statements gave a "misleading impression" that Lucid could "fill its 17,000 orders *once supply chain issues cleared*," which purportedly was not true. *Id.* But Plaintiffs do not contend that "supply chain issues" ever "cleared," and they fail to explain how the statements could be misleading given Lucid's repeated disclosures of specific risks to its ability to meet its targets. MTD 8-9.

**B.    Projected Vehicle Targets and Statements About Lucid's Ability to Achieve Those Targets Are Nonactionable Forward-Looking Statements.**

As Defendants' Motion also established, virtually all of the challenged statements are independently nonactionable under the PSLRA's safe harbor because they are forward-looking and accompanied by meaningful cautionary language. MTD 11-13.

Plaintiffs do not dispute, and thus concede, that statements ##1-2, 8, 19, 22-23, 26, and 28 are forward-looking. *See* Opp. 12 n.9. They assert that statements ##3-7, 9-16, 18, 21, 25, 27, and 29 "concealed or downplayed current facts about Lucid's internal problems." *Id.* 12. But these statements, which addressed, e.g., the expected sufficiency of mitigation plans (##5, 15, 18), the capacity to fulfill future orders (#6), and year-end production targets (##10, 13, 27), are precisely the kinds of "projections" and statements of "the plans and objectives of management" that are by definition forward-looking and protected by the safe harbor. *Intuitive Surgical*, 759 F.3d at 1058.

Plaintiffs contend, incorrectly, that the safe harbor also does not protect statements ##4-7 and 29-30 because "Defendants did not specifically identify [them] as forward-looking" (Opp. 12), but that ignores that those statements "are forward-looking on their face." MTD 11-12 (quoting *Intuitive Surgical*, 759 F.3d at 1058); *see also* 6A Sec. Reg. Forms § 4:40 (May 2023) ("[s]ome statements are obviously forward-looking" and therefore subject to safe harbor). Plaintiffs cite district court decisions for the contrary proposition, but those cases are not, in fact, to the contrary. For example, the district court in *Intuitive Surgical* concluded that challenged statements were

7

"appropriately identified" as forward-looking based only on "the plain language of [the statement] and the context." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *10 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). The same is true here. *See, e.g.*, #29 ("we're ***looking forward*** to hitting" year-end targets).

Plaintiffs additionally claim that statements ##4-7 and 29-30 fall outside the safe harbor because they "were accompanied by virtually no cautionary language" (Opp. 13)—disregarding that each of these statements was accompanied by specific risk disclosures, including, for example, about "supply chain shortages," "supply chain challenges," and "near-term challenges with commodity goods." *See, e.g.*, ##5, 10, 29; MTD 11 n.9. Plaintiffs also claim that Lucid's disclosures were inadequate because they did not state that risks were "currently impacting the Company" (Opp. 13), but, again, that is incorrect (*see, e.g.*, *supra* 3-4). Plaintiffs' contention that it is somehow "premature to decide if the safe harbor applies" (Opp. 13) is contrary to well-established Ninth Circuit law holding that cautionary language of the type employed by Lucid supplies an appropriate—and routine—basis for dismissal at the pleading stage. *See, e.g.*, *Intuitive Surgical*, 759 F.3d at 1059-60 (directing investors to risks in SEC filings at start of earnings calls sufficient for dismissal); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (same).

In any event, the challenged statements are all independently protected under the PSLRA safe harbor's second prong because Plaintiffs fail to allege that Defendants ***knew*** the statements were false or misleading when made. *See* MTD 13, 15-20; *infra* 10-12. For the reasons above (*supra* 6-7), FE-2's allegations that Mr. Rawlinson purportedly admitted in October or November 2021 that Lucid would not meet its 2022 production targets do not plausibly demonstrate otherwise (and, indeed, have nothing to do with most of Plaintiffs' claims in any event).

## C.    The Challenged Statements Are Nonactionable Opinions.

Defendants' Motion showed that the challenged vehicle production targets and statements about Lucid's ability to meet them are nonactionable opinions under *Omnicare*. MTD 13-14 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-89 (2015)). Plaintiffs fail to address—and thus concede—Defendants' arguments with respect to most of these statements (##1-4, 6-9, 12-13, 15-16, 18-19, and 21-30). The Opposition challenges

8

statements ##5, 10-11, and 14, as being "representations of current facts" and "not opinions" (Opp. 14), but glosses over the embedded future projections and "qualitative assessment[s]" about the sufficiency of Lucid's mitigation plans—i.e., classic opinions.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613-14 (9th Cir. 2017).  Plaintiffs also assert that these statements "were subjectively and objectively false" (Opp. 14), but this contention is entirely conclusory and conflicts with allegations in the CC.  MTD 8-9.  Plaintiffs, moreover, do not explain how Defendants' purported knowledge of supply chain and logistics issues leads to any plausible conclusion that Defendants knew that Lucid would not meet its targets when these statements were made.  *See, e.g.*, *Ronconi*, 253 F.3d at 431-33.

### D.     Statements of General Optimism About Performance Are Puffery.

Defendants' Motion further established that many of the challenged statements—e.g., that Lucid was "confident in" or "on track" to achieve production targets (##1, 19), and was committed to "the highest standard of quality" (#3)—are the types of vaguely optimistic statements that courts routinely hold to be nonactionable puffery.  MTD 14-15.  Plaintiffs assert that the statements were not obviously immaterial (Opp. 15), but fail to address precedent dismissing claims based on virtually indistinguishable statements.  *See Intuitive Surgical*, 759 F.3d at 1060.[4]  While statements of optimism can be actionable if they "address specific aspects of a company's operation that the speaker knows to be performing poorly" (Opp. 15), there are no such allegations here.[5]  To the contrary, as the CC alleges, Lucid took extensive steps throughout the Class Period to overcome delays and keep production on track, and Plaintiffs cannot plead, and have not pled, any facts from which to infer that Defendants knew that these efforts ultimately would be unsuccessful.  MTD 8-9.

---

[4] Plaintiffs assert that "[o]ther statements are not puffery because they provided 'a concrete description of the past and present' factors purportedly impacting production" (Opp. 15 (citing *Forescout*, 63 F.4th at 770)), but Plaintiffs fail to even identify those "other statements."

[5] Plaintiffs rely on inapposite cases that—unlike this one—involved "non-forward-looking statements." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142-44 (9th Cir. 2017) ("concrete description of the past and present state of [company's] pipeline," including new customer sales, was actionable where speaker allegedly *knew* sales opportunities were decreasing); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959-60 (9th Cir. 1996) (statement that "everything [was] going fine" to allay market concerns about FDA approval was actionable where speaker allegedly *knew* it was "largely untrue" from existing clinical study results).

9

## II.   PLAINTIFFS FAIL TO PLEAD SCIENTER

### A.   Plaintiffs' FE Allegations Do Not Give Rise to a Strong Inference of Scienter.

Plaintiffs fail to plead a strong inference of scienter based on FE allegations.  As set forth in the Motion and above, none of the FEs were in a position to provide facts as to Defendants' state of mind or Lucid's production forecasts, given their narrow roles.  MTD 15-19; *supra* 5-7.  Indeed, only three FEs (##1-3) allegedly interacted with Mr. Rawlinson or Ms. House—and none asserts facts sufficient to show that either spoke with purported knowledge of falsity or recklessness.

The Opposition cannot cure these fatal flaws.  Plaintiffs assert that "the CC pleads the very facts Defendants falsely claim are required and missing" (Opp. 18), but fail to identify these "facts."  Nor do they explain how the FEs, with their circumscribed positions and limited-to-nonexistent interactions with Mr. Rawlinson and Ms. House, could have had any basis to know what either of them knew or believed, or how Lucid set its EV targets.  Absent such allegations, the cases on which Plaintiffs rely—including *Forescout*—are inapposite.  *Supra* 5-7; MTD 16.

As to Ms. House, the FE allegations are limited to assertions that she knew—months before the Class Period—that one FE wanted a full physical inventory, that she later received an email requesting approval to scrap parts, and that even later (months after the Class Period ended), she learned of discrepancies between Lucid's actual inventory and inventory system after Lucid conducted a physical inventory count in July 2022.  ¶¶ 168-69, 177, 211, 429.  ***That is all***.  As established in the Motion, none of this raises any inference—let alone a strong one—that she or any other Defendant knew that Lucid would miss its production targets.  MTD 16-17.  Plaintiffs make no attempt to address this analytical gap, and instead baldly assert, for the first time, that she and Mr. Rawlinson "'worked together to promote' the guidance" and thus, "once Rawlinson realized Lucid would miss guidance, he 'shared that fact' with House."  Opp. 16.  Plaintiffs cannot amend their complaint through their Opposition.  *Rodriguez v. Kwok*, 2014 WL 889570, at *6 (N.D. Cal. Mar. 3, 2014).  And even if they could, this new purported allegation would fall short, as Plaintiffs do not sufficiently allege that Mr. Rawlinson himself knew that Lucid would miss its production targets and offer no basis to infer what he may have told Ms. House.  The Opposition rests on the contention that Ms. House somehow "knew Lucid would miss guidance" simply because she

10

allegedly had "direct knowledge of Lucid's internal problems" (Opp. 16)—a conclusory assertion that cannot withstand the PSLRA and FRCP 9(b). *See, e.g.*, *Ronconi*, 253 F.3d at 434.

As for Mr. Rawlinson, Plaintiffs rely on the allegations attributed to FE-1 and FE-2, but those allegations do not raise a strong inference of scienter as to him. As set forth above (*supra* 6-7), Plaintiffs ignore the numerous reasons that FE-2's allegations—that Mr. Rawlinson purportedly told employees a *year* in advance that Lucid would miss its 2022 (and 2023) targets—are not well pled and cannot be credited (*see also* MTD 17-19). The only thing that FE-1 adds is that he allegedly told Mr. Rawlinson that Lucid would "never meet its production goals," and that Mr. Rawlinson "reacted by nodding his head" (¶ 291)—but as Defendants established (MTD 17), the Ninth Circuit rejected substantially similar allegations in *Wochos*, 985 F.3d at 1194.[6]

The Opposition's remaining argument—that allegations of logistical issues, without more, support a strong inference of scienter—fails for reasons stated in the Motion. MTD 16. The cases Plaintiffs cite are not to the contrary.[7] At best, the CC pleads that Defendants knew of "[p]roblems and difficulties" in the company, which "are the daily work of business people"; their existence does not "make a lie out of any of the alleged false statements." *Ronconi*, 253 F.3d at 434.

**B.    Plaintiffs' Additional Scienter Allegations Fail as a Matter of Law.**

Plaintiffs' additional allegations also fail to establish scienter. Plaintiffs do not dispute that alleged motive and opportunity are insufficient to plead a strong inference of scienter (*see* MTD 20). Nor do Plaintiffs dispute the CC's total lack of allegations regarding Ms. House's motive—a fatal flaw that cannot be "overlook[ed]," given the absence of any other "compelling and particularized facts showing" her scienter. *Prodanova*, 993 F.3d at 1108. As to Mr. Rawlinson, whom Plaintiffs allege was motivated to inflate Lucid's stock price to trigger the vesting of

---

[6] Plaintiffs' attempt to distinguish *Wochos* as focusing only on actual knowledge and not scienter is unpersuasive. The only way to plead scienter without alleging actual knowledge is to plead "deliberate recklessness," meaning "an *extreme* departure from the standards of ordinary care . . . that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021). Here, the CC contains no allegations of recklessness distinct from its allegations attempting to plead actual knowledge.

[7] Those cases, unlike this one, invoked inapplicable theories such as the core-operations doctrine, *see Mulligan v. Impax Lab'ys, Inc*, 36 F. Supp. 3d 942, 969-70 (N.D. Cal. 2014), or alleged defendants' actual knowledge of facts contradicting their challenged statements, *see Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017).

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS - LEAD CASE NO. 3:22-CV-02094-AMO

performance-based RSUs, Plaintiffs offer conclusory denials that their scienter allegations are "generic and implausible" (Opp. 17), but they fail to address well-settled case law holding that motives to increase compensation—"including stock options and bonuses"—are indeed too generic to support a strong inference of scienter. *Rigel*, 697 F.3d at 884. Plaintiffs contend that "personal financial gain may weigh heavily in favor of a scienter inference" (Opp. 17), but that argument falls flat, as Plaintiffs do not allege that Mr. Rawlinson sold stock and profited. *See Webb v. Solar City Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (lack of stock sales can detract from scienter finding); MTD 19.[8] Further, even assuming that Plaintiffs' vesting theory had any validity (and it does not), Plaintiffs still offer no motive for continuing the alleged fraud for months after Mr. Rawlinson's RSUs had allegedly vested in January 2022 (¶ 309).[9] Plaintiffs' allegation thus has no possible bearing on the vast majority of challenged statements, which were made later (##6-30). Nor, in particular, can it explain why Lucid allegedly reduced its 2022 EV production target in February—after the RSUs had purportedly vested—to a number that Mr. Rawlinson allegedly knew was still unachievable, as opposed to a slightly lower target he knew was in reach.

Moreover, Plaintiffs' allegations of "temporal proximity" between statements reiterating Lucid's production targets and subsequent reductions to those targets do not establish scienter. MTD 19. As Plaintiffs concede (Opp. 17), "temporal proximity" can, at best, "bolster" an otherwise strong inference of scienter (*see* MTD 20). Here, the inference is lacking entirely.

### III.  PLAINTIFFS' SECTION 20(a) CLAIM ALSO FAILS

Plaintiffs' Section 20(a) claim fails in the absence of a valid Section 10(b) claim. MTD 20.

### CONCLUSION

For the reasons stated herein and in Defendants' opening brief, Defendants respectfully request that the Court dismiss the Consolidated Complaint with prejudice.

---

[8] Plaintiffs fare no better with their allegations of Lucid's private offering of convertible notes in December 2021 (¶¶ 306-07, 450), which Plaintiffs concede cannot establish scienter on their own but can only "bolster[] the CC's motive allegations" (Opp. 17 & n.15). *See, e.g.*, *Zucco*, 552 F.3d at 1006 (alleged private offering to fund "routine business objectives" does not support scienter).

[9] As for statements ##6-7 and 30, the CC does not allege that the speakers, two nondefendant employees, had scienter. MTD 16. Plaintiffs identify no Ninth Circuit support for their attempt to combine these statements with Defendants' purported scienter. *See NVIDIA*, 768 F.3d at 1063 (finding no case applying collective scienter in 20 years); *In re Volkswagen "Clean Diesel" Mktg., Sales, Pracs. & Prods. Liab. Litig.*, 2017 WL 6041723, at *9-10 (N.D. Cal. Dec. 6, 2017).

Dated:   June 8, 2023                          **DAVIS POLK & WARDWELL LLP**

By:  */s/ Neal A. Potischman*
Neal A. Potischman (SBN 254862)
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com

Brian M. Burnovski
Daniel J. Schwartz
Chui-Lai Cheung
  (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: brian.burnovski@davispolk.com
        daniel.schwartz@davispolk.com
        chui-lai.cheung@davispolk.com

*Attorneys for Defendants Lucid Group, Inc.,
Peter Rawlinson, and Sherry House*

13