**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
Max S.S. Johnson (Bar No. 348828)
(mjohnson@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

-and-

Gregory M. Castaldo (admitted *pro hac vice*)
(gcastaldo@ktmc.com)
Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
(jwhitman@ktmc.com)
Joshua A. Materese (admitted *pro hac vice*)
(jmaterese@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Counsel for Lead Plaintiff Sjunde AP-Fonden and*
*Lead Counsel for the Putative Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Lucid Group, Inc. Securities Litigation | Case No. 3:22-cv-02094-AMO |
| This Document Relates to: All Actions | **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:　　　May 1, 2025<br>Time:　　　10:00 a.m.<br>Courtroom:　10, 19th Floor<br>Judge:　　　Hon. Araceli Martínez-Olguín |

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF DEFINITIONS.................................................................................................v

NOTE ON CITATION FORMATS ............................................................................... vii

STATEMENT OF ISSUES ......................................................................................... viii

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

    A.    Lucid, the Lucid Air, and the Company's 2022 Vehicle Production Guidance .................2

    B.    Rawlinson Admitted Internally That Lucid Would Produce Fewer Than 10,000 Cars in 2022, but Misled Investors .................................................................3

    C.    Rawlinson Worked "Crazy Hours" "Night and Day" at the Plant "Throughout '22".........4

    D.    Lucid-Specific Logistics Issues Caused 90% of Lucid's Production Delays in 2022 ........4

    E.    Defendants Knew Throughout 2022 That Lucid Would Make Less Than 10,000 Cars ..............................................................................................................5

    F.    While Concealing Lucid's Internal Issues, Defendants Reduced 2022 Guidance to a Still Unattainable Range, and Continued Misleading Investors .......................6

    G.    Defendants Again Slashed Guidance and Admitted That Lucid-Specific Issues Were the "Primary Bottlenecks" to 2022 Vehicle Production.............................7

III.   LEGAL STANDARDS .........................................................................................7

IV.   ARGUMENT.......................................................................................................7

    A.    The AC Adequately Alleges Material Misstatements ...........................................7

        1.    The AC Pleads Contemporaneous Facts Demonstrating Falsity ...........................8

        2.    The Safe Harbor Does Not Protect Statements ##5-7, 9, 12, or 14-16..................14

        3.    Statements ##3 and 4 Remain Actionable ...........................................................16

        4.    No Misstatement Is Immaterial Puffery or Inactionable Opinion .........................17

    B.    Plaintiff's Allegations Raise a Strong Inference of Scienter ...............................19

    C.    Plaintiff Adequately Pleads Section 20(a) Claims...............................................25

V.    CONCLUSION...................................................................................................25

Case No. 3:22-cv-02094-AMO

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ...............................................................................................22, 24

*In re Biomarin Pharm. Inc. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ...................................................................................20

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) .........................................................................................15

*In re BP Prudhoe Bay Royalty Tr. Sec. Litig.*,
2007 WL 3171435 (W.D. Wash. Oct. 26, 2007) .........................................................................21

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) .......................................................................................18

*Crews v. Rivian Auto., Inc.*,
2023 WL 4361098 (C.D. Cal. July 3, 2023) ................................................................................13

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................................22, 23

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir 2023) .........................................................................................................23

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ......................................................................................................19

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) .........................................................................................................9

*Felipe v. Playstudios, Inc.*,
2024 WL 1380802 (D. Nev. Mar. 31, 2014) ..........................................................................10, 21

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024) ..................................................................................................... 8-9

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........................................................................................................7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ............................................................................................... *passim*

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022).................................................................................21

*In re Illumina, Inc. Sec. Litig.*,
2018 WL 500990 (S.D. Cal. Jan. 22, 2018)..................................................................................20

*Inchen Huang v. Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)..............................................................................23

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

*Jui-Yang Hong v. Extreme Networks, Inc.*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ....................................................................17

*Kipling v. Flex Ltd.*,
    2020 WL 2793463 (N.D. Cal. May 29, 2020) ...............................................................15, 17

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ............................................................................................25

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ..........................................................................................22

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)...........................................................................................................17

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019) .............................................................................23

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) .......................................................................................13, 17

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ...........................................................................21, 24

*In re Nimble Storage, Inc. Sec. Litig.*,
    252 F. Supp. 3d 848 (N.D. Cal. 2017) ...............................................................................17

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ............................................................................................25

*Nursing Home Pension Fund Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ............................................................................................9

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ...............18

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
    2024 WL 4353049 (N.D. Cal. Sept. 30 2024) .........................................................9, 17, 18

*Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*,
    2024 WL 5182634 (9th Cir. Dec. 20, 2024) .......................................................................24

*Okla. Police Pension Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480, 484 n.5 (9th Cir. 2019); .......................................................................22

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ..........................................................................................25

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ................................................................. 7, 9, 14-15, 23

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights
    Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017)......................11, 19

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

*Roberts v. Zuora, Inc.*,
   2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .......................................................................10, 16, 23

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ............................................................................................21, 24, 25

*Schueneman v. Arena Pharms, Inc.*,
   840 F. 3d 698 (9th Cir. 2016) ...........................................................................................12, 19, 20

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
   485 F. Supp. 3d 1113 (N.D. Cal. 2020) ......................................................................................16

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
   2024 WL 3579322 (N.D. Cal. Jul. 29, 2024) ...............................................................................24

*Sgarlata v. PayPal Holdings, Inc.*,
   409 F. Supp. 3d 846 (N.D. Cal. 2019) ........................................................................................22

*In re SolarCity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ...................................................................................18, 22

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996) ...........................................................................................................9

*In re Talis Biomedical Corp. Sec. Litig.*,
   2022 WL 17551984 (N.D. Cal. Dec. 9, 2022).............................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).....................................................................................................................19

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009) ........................................................................................10

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
   2017 WL 2378369 (C.D. Cal. May 31, 2017) .............................................................................17

*Weston v. Docusign, Inc.*,
   669 F. Supp. 3d 849 (N.D. Cal. 2023) ............................................................................... *passim*

*In re Wet Seal, Inc. Sec. Litig*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ......................................................................................17

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ...............................................................................................15, 20

*Yanek v. Staar Surgical Co.*,
   388 F. Supp. 2d 1110 (C.D. Cal. 2005) ......................................................................................20

*Zaghian v. Farrell*,
   675 F. App'x 718 (9th Cir. 2017) ...............................................................................................20

*Zaidi v. Adamas Pharms., Inc.*,
   650 F. Supp. 3d 848 (N.D. Cal. 2023) .....................................................................................9, 10

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

**TABLE OF DEFINITIONS**

| Term | Definition* |
|---|---|
| 2022 Guidance | Lucid's representation that it would produce 20,000 vehicles in calendar year 2022, which Defendants reiterated on November 15, 2021 |
| AC | Plaintiff's Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 108) |
| Air | The Lucid Air (Lucid's sole EV product during the Class Period) |
| Bach | Eric Bach, Lucid's Senior VP of Product and Chief Engineer leading up to and during the Class Period |
| Boike | Mike Boike, Lucid's Head of Arizona Operations – Senior Director of Manufacturing from April 2021 to August 2022 |
| CEO | Chief Executive Officer |
| Class Period | November 15, 2021 through August 3, 2022, inclusive |
| CW | Confidential Witness |
| Defendants | Lucid and Rawlinson |
| Delay Statements | Statements ##6-7, 9-11, 13, and 16, in which Defendants purported to identify the reasons for Lucid's production shortfalls and/or the risks to meeting the 2022 Guidance or the Reduced 2022 Guidance |
| EV | Electric Vehicle |
| Exchange Act | Securities Exchange Act of 1934 |
| FE | Former Employee |
| Hasenkamp | Peter Hasenkamp, Lucid's VP of Supply Chain leading up to and during the Class Period |
| Hochholdinger | Peter Hochholdinger, Lucid's VP of Manufacturing leading up to and during the Class Period |
| Lead Plaintiff or Plaintiff | Sjunde AP-Fonden, the Court-appointed lead plaintiff in this action |
| Logistics Admission | Defendant Rawlinson's representations during a May 8, 2023 Lucid earnings call that: "Last year, my laser focus was working crazy hours in the factory, that's what I was doing, crazy hours to resolve logistics and supply chain issues," and "I was part of a team that worked night and day in that factory to resolve issues throughout '22" (*see, e.g.*, ¶¶305, 359, 456) |
| Lucid or the Company | Lucid Group, Inc. |
| Ludwig | Walter Ludwig, Lucid's VP of Global Logistics from approximately May 2022 through the end of the Class Period |
| Order | The Court's August 8, 2024 Order Granting in Part and Denying in Part Motion to Dismiss with Leave to Amend; Granting Request for Judicial Notice (ECF 103) |
| Plant | Lucid's sole manufacturing facility located in Casa Grande, Arizona |

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

| Term | Definition* |
|------|-------------|
| Production Admission | Defendant Rawlinson's internal admission at a Lucid meeting in October or the first week of November 2021 that Lucid would produce fewer than 10,000 vehicles in 2022 (*see, e.g.*, ¶¶306-08, 448; Order at 18) |
| Projection Statements | Statements ##5-7, 12, and 14-16, in which Defendants announced or reiterated the Reduced 2022 Guidance |
| PSLRA | The Private Securities Litigation Reform Act of 1995 |
| Rawlinson | Peter Rawlinson, Lucid's CEO and Chief Technology Officer leading up to and throughout the Class Period |
| Reduced 2022 Guidance | Lucid's representation, first announced on February 28, 2022, that it would produce 12,000 to 14,000 vehicles, rather than 20,000 vehicles, in calendar year 2022 |
| Section 20(a) | Section 20(a) of the Exchange Act |
| Tosh | Randy Tosh, Lucid's Senior Operations Manager – Plant Logistics throughout the Class Period |
| VP | Vice President |
| Warehouse | Lucid's warehouse located in Tempe, Arizona |

*Any term not contained in this chart has the same meaning ascribed to it in the AC.

Case No. 3:22-cv-02094-AMO

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

**NOTE ON CITATION FORMATS**

Unless otherwise stated, all emphases and ellipses in citations used herein have been added and all quotations, internal quotation marks, citations, and all original emphases and alterations have been omitted.

Commonly used citations in this brief take the following form:

| Citation | Description |
|---|---|
| ¶[•] | Paragraph in the AC |
| §[•] | Section in this Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the AC |
| #[•] | Numbered alleged misstatements set forth in Appendix to the AC (ECF 109), which also identifies the "Reasons Statements Were False and Misleading When Made" and the "Facts Giving Rise to a Strong Inference of Scienter" |
| MTD [•] | Numbered pages of Defendants' Motion to Dismiss the AC (ECF 120) |
| Order | The Court's August 8, 2024 Order Granting in Part and Denying in Part Motion to Dismiss with Leave to Amend; Granting Request for Judicial Notice (ECF 103) |
| PX | Plaintiff's exhibits, attached to the accompanying Declaration of Stacey M. Kaplan in Support of Lead Plaintiff's Opposition to Defendants' Motion to Dismiss the AC |
| Section | Section in the AC |

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

**STATEMENT OF ISSUES**

1.    Whether the AC adequately pleads materially false or misleading statements and scienter for Plaintiff's claims against Defendants under §10(b) of the Exchange Act.

2.    Whether the AC states a control person claim against Defendant Rawlinson under §20(a) of the Exchange Act.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

## I.    **INTRODUCTION**

The Court previously sustained Defendants' November 2021 statements that: (i) reiterated Lucid's 2022 Production Guidance of 20,000 vehicles; and (ii) identified pandemic-related global supply chain issues as the main risk to achieving that goal. *See* Order at 17-25. In addition to other facts, the Court concluded that Rawlinson's Production Admission—that Lucid would make less than 10,000 cars in 2022 due to ongoing internal logistics problems—alleged falsity and scienter for these statements. *Id*. at 17-25, 33-35. The Court determined, however, that these facts were not sufficiently contemporaneous to support falsity and scienter for similar statements Defendants made a few months later in February 2022, when they announced the Reduced 2022 Guidance of 12,000 to 14,000 vehicles, or for statements thereafter reiterating that guidance and concealing Lucid's ongoing internal logistics problems. *Id*. at 17-25. The AC cures the perceived deficiencies by pleading facts establishing that Lucid's internal logistics struggles and production shortfalls persisted throughout 2022, and Rawlinson knew it.

As set forth herein, the Lucid-specific logistics issues that led to Rawlinson's Production Admission only intensified as the Class Period proceeded. Rawlinson knew this because, among other things, he: (i) witnessed Lucid's crippling logistics problems first-hand while working "crazy hours in the factory" "night and day" "throughout '22" trying to resolve them; (ii) was told in late January or early February 2022 that Lucid's logistics problems were continuing; and (iii) knew, from briefings at daily 8 a.m. meetings, that Lucid's unique logistics issues caused it to miss its daily and weekly production goals throughout the Class Period, with Lucid falling further behind every day. These and other well-pled allegations show that during the Class Period, no fact emerged to undercut Rawlinson's view that Lucid would produce less than 10,000 cars in 2022, so that any 2022 guidance exceeding that amount lacked a reasonable basis, rendering each Projection Statement (##5-7, 12, 14-16) actionable. The AC also pleads facts confirming, among other things, that Lucid's logistics issues caused 90% of its production delays in 2022, such that each Delay Statement (##6-7, 9-11, 13, 16), blaming Lucid's sluggish production rate on the global supply chain and other exogenous issues, was materially misleading when made. *See infra* §IV.A.1; *see also* PX A.

Defendants side-step the AC's well pled facts in asserting that none of the 2022 misstatements is actionable. Additionally, Defendants' contention that the Safe Harbor immunizes many of their misstatements ignores: (i) that there is no safe harbor for statements of current or historical fact; and (ii)

**LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT**

the Court's prior determination that the *same* cautionary language was not meaningful. *See infra* §IV.A.2. Defendants state no credible reason for the Court to revisit its prior determination that ##3 and 4 are actionable, and each of ##8, 9, and 12 stated objectively verifiable facts about the indisputable core of Lucid's business—none is immaterial puffery or inactionable opinion. *See infra* §§IV.A.3 and IV.A.4.

Through many of the same facts supporting falsity, the AC also adequately alleges scienter for each of the 2022 statements. For example, based upon his constant presence at the Plant "night and day" "throughout '22" trying to resolve Lucid's logistics issues, Rawlinson knew that those issues did not improve and that the basis for his admission that Lucid would produce fewer than 10,000 cars in 2022 only solidified as the Class Period proceeded. Rawlinson's participation in meetings, receipt of daily production information, and the failed measures he took to spur production further support the scienter inference. Here, the Court should fully credit the consistent and corroborative facts that the FEs provided, as each was in a position to know the information that he shared. Moreover, as it did for the 2021 statements, the core operations doctrine supports scienter for the 2022 statements, and there is no basis for the Court to reconsider its determination that Rawlinson had a motive to commit the alleged fraud. *See infra* §IV.B.

Plaintiff respectfully requests that the Court deny Defendants' MTD in its entirety.

## II.    STATEMENT OF FACTS

### A.    Lucid, the Lucid Air, and the Company's 2022 Vehicle Production Guidance

During the Class Period, Lucid's only product was the Air, a luxury EV that accounted for 80-98% of the Company's revenues. ¶¶77, 92-93. Lucid went public on July 26, 2021. ¶¶110, 126. By taking Lucid public, Rawlinson secured a $2 million bonus, as well as the ability to earn stock options worth up to $556 million, half of which were pinned to the Company hitting certain stock valuation milestones. ¶¶8-9, 12, 117-18, 126. According to Rawlinson: "I'm all in on stock options[,] *that's what motivates and drives me . . . I'm really working for primarily stock options*[.]" ¶118.

With only one product, Lucid's success hinged entirely upon mass producing the Air. *See* Sections V.C, VII.C. As Rawlinson put it, "[u]ntil we get this thing into production, we haven't achieved a damn thing." ¶87. He further conceded that Lucid's stock valuation was "all about scaling volume." ¶103. Before Lucid went public, Defendants announced the 2022 Guidance of 20,000 vehicles (¶¶113, 119-20), which they reiterated thereafter (¶¶128, 131, 396). Investors recognized that whether Lucid could mass

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

produce the Air would be the biggest factor driving its stock price. ¶¶101-03.

### B. Rawlinson Admitted Internally That Lucid Would Produce Fewer Than 10,000 Cars in 2022, but Misled Investors

To produce the Air, Lucid had to deliver production-ready vehicle parts from the Warehouse to the Plant. ¶¶132-38. Leading up to the Class Period, numerous internal logistics issues prevented Lucid from doing so, significantly impeding production. These issues included that Lucid: (i) did not have a functional inventory system for tracking and locating parts (*e.g.*, Section V.J.1.a); (ii) did not know how much inventory it held or needed (*e.g.*, Sections V.J.1.b-d); (iii) operated its Warehouse well-over capacity, which stymied efforts to deliver parts to the Plant (*e.g.*, Sections V.J.1.e-g); and (iv) could not get parts to the Plant in a timely manner, causing persistent production shutdowns (*e.g.*, Sections V.J.1.j, V.J.3).

As a result of these and other internal issues severely constraining vehicle production, Rawlinson knew before the Class Period began that Lucid would not produce 20,000 cars in 2022, and ***admitted internally at a meeting in October 2021 or the first week of November 2021 that Lucid would produce fewer than 10,000 vehicles in 2022***. ¶¶306-08, 448. Moreover, in September and November 2021, FE-1 told Rawlinson that because of Lucid's severe Warehouse logistics issues, there was no way Lucid would meet its 2022 Guidance, in response to which Rawlinson nodded his head. ¶310; *see also* ¶307 (in October 2021, Rawlinson, Hasenkamp, Hochholdinger, Bach, and Boike admitted that Lucid would miss 2022 Guidance); ¶311 (senior managers agreed in October 2021 that Lucid would miss 2022 Guidance).

Rawlinson, nevertheless, misled investors by reaffirming Lucid's 2022 Guidance on November 15, 2021, stating: "We remain confident in our ability to achieve 20,000 units in 2022." ¶¶395-96. He also misleadingly flagged as the only risks "ongoing challenges facing the automotive industry, with global disruptions to supply chains and logistics" and the impact of COVID, while concealing Lucid's internal problems. *Id*. In response, Lucid's stock price soared by 24%, adding more than $17 billion to its valuation. ¶¶24, 331. During an interview the next day, Rawlinson agreed it was "[a]bsolutely" no problem for Lucid to fill its 17,000 Air orders, while highlighting as vulnerabilities only "supply chain shortages that the entire industry is facing." ¶¶402-09. By inflating Lucid's stock price for its first months as a public company, Rawlinson secured 87% of his options, worth ***$263 million*** as of April 2022. ¶¶25, 338, 477-81. Lucid also capitalized, conducting an "[o]pportunistic" $2 billion notes offering. ¶¶336, 483.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

**C.      Rawlinson Worked "Crazy Hours" "Night and Day" at the Plant "Throughout '22"**

In November 2021, Rawlinson said that his "*laser focus*" was on increasing production. ¶89. In May 2022, Rawlinson stated "ramping production" was his "*top priority*." ¶90. Consistent with these statements, Rawlinson admitted in May 2023 that: "*Last year, my laser focus was working crazy hours in the factory, that's what I was doing, crazy hours to resolve logistics and supply chain issues*" and "*I was part of a team that worked night and day in that factory to resolve issues throughout '22*." ¶305. FEs confirm Rawlinson's frequent presence at the Warehouse and Plant. ¶¶232-44, 303-05, 360-62, 452-56.

**D.      Lucid-Specific Logistics Issues Caused 90% of Lucid's Production Delays in 2022**

FE-8, who worked for Lucid from mid-2021 until early 2022, explained that 90% of the production delays were caused by internal logistics problems—"*that's where the bottleneck was*." ¶¶ 282, 356. FE-12, who worked at Lucid from summer 2021 to early spring 2022, similarly reported that 90% of the time, Lucid internally blamed the Warehouse for lagging production. ¶¶321, 356; *see also* ¶289 (FE-3 and FE-4: production delays were blamed on internal logistics problems). Defendants' August 2022 admission that Lucid's logistics issues were still the main bottleneck to production confirms these facts. ¶¶357, 515.

Rawlinson knew of the internal issues and their impact on production—heading into 2022, Rawlinson acknowledged internally that Warehouse problems caused delays and decreased production. ¶246; Order at 18. Rawlinson's knowledge of Lucid's internal problems is further confirmed by his own actions, including his: (i) failed "Warehouse on Wheels" plan in January 2022, pursuant to which Lucid rented 53-foot trailers to house parts that the overstuffed Warehouse could not accommodate (¶353); and (ii) decision to spend "night and day" at the Plant in 2022 attempting to solve them (¶305).

Rawlinson's presence on-site "night and day" "throughout '22" to resolve logistics issues also gave him first-hand knowledge of the pervasive Lucid-specific problems that the FEs consistently and corroboratively flagged as impeding vehicle production throughout 2022 (*see generally* Sections V.J (¶¶143-302), V.N (¶¶344-62), VII.B (¶¶457-63)), including:

- ***Lucid never had a functioning inventory management system, and the Warehouse was so persistently overcrowded and disorganized that parts could not be timely located and sent to the Plant*** (¶¶145-207; 280, 283, 348-51, 353, 355-56; *see, e.g.*, ¶¶145 (FE-11: Warehouse was a "complete mess" and did not begin to improve until fall 2022), 158 (FE-9: Plant was shut down for eight full days in December 2021 or January 2022 while Lucid again attempted to implement SAP), 162 (FE-3: Lucid's inventory systems were never accurate, and SAP problems persisted through summer 2022), 166 (FE-5: Rawlinson repeatedly briefed that SAP was not working), 193 (FE-3:

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

Warehouse overcrowding worsened by February 2022), 355 (FE-11: inadequate shipments from Warehouse to Plant prevented Lucid from hitting daily production goals));

- ***Because Lucid could not get production-ready parts from the Warehouse to the Plant, its production line shut down for hours every day, as reflected in emails to senior management, Lucid's internal website, and TV monitors in the Warehouse*** (¶¶213-17, 282, 292-302, 354; *see, e.g.*, ¶¶215 (FE-1: through at least mid-2022, Plant serially rejected parts from Warehouse that were improperly reflashed), 282 (FE-8: insufficient parts caused production stoppages, as recorded in emails copying management), 295 (FE-3: production line would shut down for an average of 2-3 hours every day due to inventory problems, as reflected on the parts shortage dashboard on Lucid's internal website and on TV monitors displayed around the Warehouse));

- ***The overcrowded Warehouse could not timely receive new parts*** (¶¶208-12; *see, e.g.*, ¶208 (FE-4: Warehouse so crowded that delivery trucks would wait for hours or even days to unload));

- ***Millions of dollars in parts were lost or destroyed based upon the chronically over-capacity Warehouse*** (¶¶218-26, 352; *see, e.g.*, ¶¶219 (FE-3: based upon overcrowding, 25% of the parts in the Warehouse became damaged), 220 (FE-1: upon his departure in mid-2022, Lucid was scrapping $20-$30 million in parts per month)); and

- ***Lucid's Plant had its own logistical issues preventing parts from reaching the production line*** (¶¶227-30, 281; *see, e.g.*, ¶228 (FE-3: Plant was slow to unload deliveries from Warehouse and Plant would often order parts sitting right outside on unloaded trailers)).

**E.     Defendants Knew Throughout 2022 That Lucid Would Make Less Than 10,000 Cars**

Because Lucid's Warehouse logistics problems and resulting production stoppages only intensified after Rawlinson admitted that Lucid would make fewer than 10,000 cars in 2022, he knew that there was no reasonable basis for the Reduced 2022 Guidance of 12,000 to 14,000 cars (discussed below). ¶¶31, 306-24, 363-65, 448-50, 459, 465. Lucid's sluggish production pace during the Class Period only further confirmed the Production Admission. ¶¶306-08, 448. Lucid tracked and discussed its vehicle production rate, as well as the internal logistics issues slowing production, in daily meetings: (i) at 7 a.m. with Lucid logistics VPs and Rawlinson's direct reports (including Ludwig), which Rawlinson also occasionally attended; and (ii) at 8 a.m., where Lucid VPs reported information from the 7 a.m. meetings to Rawlinson. ¶¶312-21, 363-65, 450, 459. FE-11 explained that the 7 a.m. meetings he attended from fall 2021 to late 2022 always included reviewing and discussing, among other things: (i) the number of cars produced the prior day relative to that day's target; (ii) the number of cars that were customer-ready; and (iii) total vehicle production for the year and year-to-date. ¶¶313-14. This data was provided to the VPs at the 7 a.m. meeting in preparation for their 8 a.m. daily meeting with Rawlinson. ¶313.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

FE-12 also attended daily logistics meetings, confirmed that Rawlinson occasionally attended, and reported that Lucid managers, including Tosh, shared a spreadsheet that tracked Lucid's production against daily and weekly goals. ¶320. During FE-12's tenure from summer 2021 to early spring 2022, Lucid never met its weekly production goal, and Tosh's spreadsheet reflected that Lucid only fell further and further behind every day. *Id*. Even after instituting seven-day work weeks for logistics personnel while he "worked night and day" "to resolve issues," Rawlinson knew that Lucid's production was below its targets. ¶¶305, 320, 359, 456. FE-11 relayed that there was only one time that Lucid met its daily production goal from the fall of 2021 to late 2022. ¶315. He also said that when the Reduced 2022 Guidance was announced, Lucid's ongoing issues led logistics personnel to conclude that the Company would not even produce half of that amount. ¶¶317-18. In fact, Lucid produced only 7,180 cars in 2022. ¶¶39, 358.

### F.    While Concealing Lucid's Internal Issues, Defendants Reduced 2022 Guidance to a Still Unattainable Range, and Continued Misleading Investors

On February 28, 2022, Defendants announced the Reduced 2022 Guidance, which slashed the 2022 Guidance by up to 40%. ¶¶26-29, 32-33, 339-43, 410-25. Having just locked down his massive options package on the back of his prior misstatements, Rawlinson said nothing of the Lucid-specific logistics issues that continued to forestall production of more than 10,000 cars in 2022. *See* §§II.D and II.E. In fact, Lucid's internal logistics problems had only worsened since Rawlinson's Production Admission, depriving 2022 guidance exceeding 10,000 cars of any reasonable basis. ¶¶27, 34, 306-08, 347, 357, 449. Concealing this, Defendants misled investors by claiming, among other things: (i) "like many manufacturers, our production has been and indeed continued to be impacted by supply chain challenges" (¶414); and (ii) Lucid "could have chosen to build [cars] faster" (¶415). While Lucid's stock price declined more than 13% in response (¶340), Defendants' misleading assurances that the production shortfall resulted from transient, industry-wide issues that would soon improve maintained artificial inflation in Lucid's share price. ¶¶372-75, 423.

As the Class Period progressed, Defendants reaffirmed the Reduced 2022 Guidance, while flagging global supply chain issues as the only "bottlenecks" and concealing the internal problems that continued supporting Rawlinson's Production Admission. ¶¶426, 430-31, 433-34, 440. For example, on May 5, 2022, Lucid "reiterated" the Reduced 2022 Guidance and claimed that the Company "remain[ed] on track" to

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

meet it (¶430), while misleading that "supply chain dynamics" including "COVID lockdowns in China" were the "bottlenecks" to production (¶431). On May 20, Rawlinson affirmed the Reduced 2022 Guidance, while calling out "global supply chain challenges" affecting "all the auto industry" as the only risk. ¶440.

### G.    Defendants Again Slashed Guidance and Admitted That Lucid-Specific Issues Were the "Primary Bottlenecks" to 2022 Vehicle Production

On August 3, 2022, Defendants finally revealed what Rawlinson had known since the first day of the Class Period: Lucid would produce fewer than 10,000 cars in 2022 because of the Company's logistics issues. ¶¶385-94, 509-37. Specifically, Lucid announced that it "revised its 2022 production volume outlook to a range of 6,000 to 7,000 vehicles." ¶510. *For the first time*, Defendants conceded that Lucid-specific "logistics challenges," *not* global supply chain issues, were the "***primary bottlenecks***" to vehicle production (¶515), including that: (i) the "immaturity of *our logistics* processes" hampered Lucid's "ability to speed the correct part to a line at the correct time and cadence" (¶¶514-15); (ii) "*our logistics* constraints prevented us from scaling meaningfully" (¶513); and (iii) Lucid suffered from "production pauses, primarily in order to improve *our logistics* processes" (¶514). In response, the price of Lucid stock fell by almost 10% (¶518), with *The New York Times* noting: "Mr. Rawlinson conceded that much of Lucid's production shortfall was caused by the [C]ompany's inexperience—for example, difficulties setting up a system that delivers the right parts to the assembly line at the right time" (¶522).

## III.    LEGAL STANDARDS

In resolving this Motion to Dismiss, the Court must consider the AC in its entirety, accept all allegations as true, and draw all reasonable inferences in Plaintiff's favor. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings[.]" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

## IV.    ARGUMENT

### A.    The AC Adequately Alleges Material Misstatements

Statements "are actionably false or misleading if they [(i)] directly contradict what the defendant knew at that time[;] *or* [(ii)] create an impression of a state of affairs that differs in a material way from the one that actually exists." Order at 9. The "central inquiry is whether a reasonable investor would have been

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

misled about the nature of his investment." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1181 (9th Cir. 2024). Falsity is subject to "a particularity requirement and the [*Twombly/Iqbal*] reasonable inference standard of plausibility"; plaintiffs need not plead "a strong inference of fraud." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).

### 1.    The AC Pleads Contemporaneous Facts Demonstrating Falsity

Rawlinson admitted by the first week of November 2021 that Lucid would make less than 10,000 cars in 2022. ¶¶306-08, 448.[1] While the Court concluded that this admission supported falsity for statements made in November 2021, it reasoned that the admission was not sufficiently contemporaneous to support falsity for the 2022 statements. Order at 18-20. Without defining "contemporaneous," and unable to reference any fact that could have caused Rawlinson to change his views, Defendants argue that Rawlinson's Production Admission is "too remote" to support falsity for statements he made just months later. MTD 5-7. Defendants are wrong.

A "contemporaneous" fact is one "existing, occurring or originating during the same time."[2] A fact "existing" at a point in time is one that "continues to be."[3] As pled in detail in the AC (¶¶145-230, 280-83, 292-302, 312-21, 348-56), and summarized above in §II.D, the Lucid-specific logistics issues underlying Rawlinson's Production Admission[4] not only continued, but *worsened* during the short period of time before Defendants' February and May 2022 misstatements—leading Rawlinson to work "night and day" at the Plant "throughout '22" to try to resolve those very issues (¶¶28-29, 305, 359, 456). During this time, Rawlinson also learned from the daily 8 a.m. meetings that Lucid never met its weekly production goals, and only fell further and further behind every day, despite the 80-hour work weeks that he instituted. ¶¶313, 320; *see also generally* ¶¶306-24, 363-65, 448-50, 459, 465; §II.E. No facts support concluding that, at any point during the Class Period, Rawlinson's belief that Lucid would produce fewer than 10,000 cars in 2022 suddenly evaporated. Lucid's Reduced 2022 Guidance does not alter the analysis, as it exceeded the

---

[1]    FE-1 also informed Rawlinson in September and November 2021 that Lucid would never meet its 2022 Guidance, with Rawlinson nodding his head in response. ¶310.

[2]    *Contemporaneous*,    MERRIAM-WEBSTER.com,    https://www.merriam-webster.com/dictionary/contemporaneous (last visited Feb. 4, 2025).

[3]    *Existing*, MERRIAM-WEBSTER.com, https://www.merriam-webster.com/dictionary/existing (last visited Feb. 4, 2025).

[4]    *See* Order at 22 (Rawlinson knew as of November 16, 2021, that Lucid-specific logistics problems would prevent the Company from meeting its 2022 Guidance).

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

Production Admission by 20%-40%. ¶¶339-43.[5] Accordingly, Rawlinson's Production Admission "continued to be," "existed," and was therefore "contemporaneous" with each of the 2022 statements.[6]

That the Production Admission supports falsity (and scienter) for the 2022 statements is consistent with numerous decisions from within this Circuit. For example, the Ninth Circuit reversed the dismissal of claims based upon growth projections alleged to be misleading because certain transactions upon which such growth depended had *earlier been* delayed or fallen through. *See Nursing Home Pension Fund Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004). Like Rawlinson's Logistics Admission, the Ninth Circuit concluded that Oracle's CEO's concession that he "was involved in an awful lot" of the earlier delayed or dissolved deals supported that he knew the growth projections were unobtainable. *Id*. at 1232. More recently, the Ninth Circuit credited a CEO's March and April 2011 internal admissions that the market "had become saturated" in sustaining rosy statements about the company's sales pipeline made from May 26, 2011 to July 25, *2012. See Quality Sys.*, 865 F.3d at 1135, 1144, *cited with approval in* Order at 19. In the "months preceding the class period" in *Weston v. Docusign, Inc.*, 669 F. Supp. 3d 849 (N.D. Cal. 2023), defendants learned that customers would not renew their eSignature contracts when COVID subsided, *id*. at 867, 879. As with Lucid's logistics and vehicle production, renewal rates at DocuSign did not improve, and the court concluded that statements made during the two-year class period were adequately alleged to be false or misleading based, largely, on pre-class period information. *Id*. at 880-81.

Numerous other courts have concluded that falsity was adequately alleged based upon negative circumstances existing prior to or at the beginning of a class period. *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949 (9th Cir. 2023) (February 2017 statements misleading based upon adverse information learned from September-December 2015); *Zaidi v. Adamas Pharms., Inc.*, 650 F. Supp. 3d 848, 857 (N.D. Cal. 2023) ("temporal gap" between adverse results of survey conducted in "first-half of 2017" and misstatements made on August 8, 2017 "is not so large that it would be unreasonable to infer

---

[5]    Other Lucid employees also knew the Reduced 2022 Guidance was unattainable. ¶¶317-18, 365.
[6]    Defendants' two cases, MTD 7, are off-base. Plaintiff does not rely on reports "from prior years" to support falsity, as was the case in *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2024 WL 4353049, at *8 (N.D. Cal. Sept. 30 2024). This Court, however, *did* credit information from an "internal 2019 study" concerning Instagram's impact on teen girls in sustaining statements made in 2021—a far longer temporal gap than at issue here. *Id*. at *13. In *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996), the court rejected falsity for statements made 18 days after a consent decree was imposed, which was "before the company had any way of knowing the precise impact."

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

the statement was materially misleading"); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *3, *9 (N.D. Cal. Apr. 28, 2020) (statements made from April 12, 2018 through May 30, 2019 were false or misleading based upon adverse information arising in October 2017); *Felipe v. Playstudios, Inc.*, 2024 WL 1380802, at *12 (D. Nev. Mar. 31, 2014) (actual knowledge pled based on problems existing "over six months prior to" registration statement). Consistent with these authorities, the AC adequately alleges that Lucid's Projection Statements and Delay Statements were materially false or misleading when made.

**Projection Statements: ##5-7, 12, 14-16**. Defendants first announced the Reduced 2022 Guidance of 12,000 to 14,000 vehicles on February 28, 2022 (##5-7). ¶¶411-12, 414. As set forth above, no circumstances had emerged in the preceding few months cutting against Rawlinson's internal admission that Lucid would produce less than 10,000 cars in 2022. In fact, Lucid's logistics constraints only worsened, efforts to address them (like Rawlinson's "Warehouse on Wheels") failed, and Lucid missed all of its production goals, as discussed in daily meetings and reported to Rawlinson. ¶¶145-230, 280-83, 292-302, 306-24, 348-56, 363-65, 448-50, 459, 465. Rawlinson was on-site throughout this period to try to resolve Lucid's logistics issues, which *required* detailed knowledge of the problems requiring remediation. ¶¶28-29, 305, 359, 456. Accordingly, Rawlinson had contemporaneous knowledge that Lucid could not meet the Reduced 2022 Guidance—including witnessing first-hand and, therefore, knowing—the undisclosed logistics issues undermining it. *See Zaidi*, 650 F. Supp. 3d at 857; *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 972-73 (N.D. Cal. 2009) (projections actionable where plaintiffs "alleged that [defendants] were aware of undisclosed facts tending seriously to undermine [their] accuracy").

In May 2022, Defendants reiterated the Reduced 2022 Guidance (##12, 14, 15, 16). ¶¶430, 433, 434, 440. By this time, Lucid's internal logistics problems had still not improved, and the Company's problems caused production to fall further and further behind. ¶¶28, 320, 363-64, 450; *see also* §II.E. For example, FE-11, who worked at Lucid from the fall of 2021 through late 2022, shared that there was only one day when Lucid met its daily production goal. ¶315. Because Rawlinson received daily vehicle production information while at the Plant "night and day" "throughout '22," he possessed contemporaneous knowledge that reiterating Lucid's Reduced 2022 Guidance lacked a reasonable basis. *See Weston*, 669 F. Supp. 3d at 880-81. Additionally, the proximity of Defendants' August 2022 disclosure cutting the Reduced 2022 Guidance in half and attributing the massive reduction to Lucid's *own* logistics

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

problems, supports that ##12, 14, 15, and 16 were knowingly false when made. *See Reese v. Malone*, 747 F.3d 557, 574 (9th Cir. 2014) (temporal proximity supports knowledge), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

Defendants' arguments for dismissing ##5-7, 12, and 14-16 are unavailing. *First*, as demonstrated above at pp. 8-10, the facts and law support that Rawlinson's Production Admission was "contemporaneous" with the 2022 statements, such that there is no "temporal mismatch." MTD 7-8. *Second*, Defendants' repeated claim that the AC does not adequately allege that Rawlinson "adopted" the views of other Lucid employees (*id.*) is irrelevant, as Rawlinson maintained *his own view* that Lucid would produce fewer than 10,000 cars in 2022, and knew from his constant presence at the Plant in 2022, as Lucid's struggles intensified, that nothing had transpired to undermine his view. *See* §§II.D and II.E. *Third*, Defendants' suggestion that Lucid's poor production results may have been factored into the Reduced Guidance (MTD 8) is rank speculation—there is no fact to support an inference that Rawlinson abandoned his view that Lucid would produce fewer than 10,000 cars in 2022 before issuing the Reduced 2022 Guidance or at any point during the Class Period. On the other hand, Lucid's logistics management employees, including Rawlinson's direct reports, contemporaneously disbelieved that Lucid could meet the Reduced 2022 Guidance, which is consistent with Rawlinson's Production Admission. ¶¶317-19.

***Delay Statements: ##6-7, 9-11, 13, 16***. The Court previously sustained portions of Rawlinson's November 2021 statements (##1, 2, 4) attributing Lucid's production problems "to supply chain and logistics issues stemming from a pandemic that affected the auto industry and others across the board," because these statements "concealed that Lucid's own operational failings had materialized" and were negatively impacting production. Order at 25. As Lucid's logistics issues worsened in 2022, Defendants continued to publicly identify global supply chain issues as the *only* cause for diminished production, concealing that Lucid's ***Warehouse logistics failures caused 90% of the delays*** (¶¶246, 282, 289, 321, 356)—all of which Rawlinson knew because he "***worked night and day in th[e] factory to resolve issues throughout '22***" (¶¶305, 359, 456). The Delay Statements (##6-7, 9-11, 13, 16) are actionable because each gave investors the misleading impression that Lucid's production delays were caused by short-term factors impacting the industry, and that Lucid was otherwise ready to ramp production, all while its internal issues prevented mass production. Order at 21 (statement is misleading by omission "if it 'affirmatively

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

create[s] an impression of a state of affairs that differs in a material way from the one that actually exists'").

For example, during Lucid's 4Q21 earnings call, Defendants consistently and misleadingly pinned Lucid's production shortfalls on global supply chain issues affecting the whole industry. *See, e.g.*, ¶¶414 (#7: "[L]ike many manufacturers, our production has been and indeed continued to be impacted by supply chain challenges."), 417 (#9: flagging "supply chain challenges" attributable to "a small handful of suppliers" as the reason for reduced production), 419 (#10: referencing only constraints from "just a small handful of our 250 suppliers" in response to a question concerning "causal factors" for reduced production). Rawlinson made similar claims in his Delay Statements later in the Class Period. ¶¶426 (#11: March 17, 2022 statement to Reuters that Lucid's production "bottlenecks were caused by a handful of suppliers"), 431 (#13: May 5, 2022 statement that "the COVID lockdowns in China that's impacting others in the industry are also resulting in some bottlenecks for us"), 440 (#16: May 20, 2022 claim that "[w]e're facing global supply chain challenges, as is all the auto industry and other industries").

Prior to each of the Delay Statements: (i) Rawlinson knew that Lucid's Warehouse logistics problems were delaying production (¶246); (ii) FE-1 told Rawlinson in late January or early February 2022 that Lucid's internal issues continued to impact production (¶240); (iii) Rawlinson knew that his January 2022 "Warehouse on Wheels" scheme to address overcapacity issues failed to spur production (¶353); (iv) the Plant was shut down for eight full days in December 2021 or January 2022 to address inventory issues (¶158); (v) Warehouse overcrowding had worsened by February 2022 (¶193); and (vi) the production line shut down for 2-3 hours every day from the beginning of 2022 until late summer 2022 based upon Lucid-specific issues (¶295). By concealing Lucid's logistics issues causing 90% of its 2022 production delays (¶¶282, 321, 356), Rawlinson "affirmatively create[d] an impression of a state of affairs," *Forescout*, 63 F.4th at 771, that materially differed from the contemporaneous reality at Lucid, as the FEs consistently and corroboratively report. *See* §§II.D and II.E; *see also Schueneman v. Arena Pharms, Inc.*, 840 F. 3d 698, 706 (9th Cir. 2016) (when speaking, defendants are "bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information").

Defendants' arguments for dismissing ##6-7, 9-11, 13, and 16 (MTD 9-11), fall flat. *First*, Defendants contend the Delay Statements are not false because "Lucid did experience supply chain constraints." MTD 9. The Delay Statements, however, blamed production shortfalls primarily or wholly

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

on external factors, particularly supply chain constraints and COVID lockdowns. Even assuming *arguendo* that supply chain issues had some impact on Lucid's production rate, the Delay Statements were misleading because the primary bottleneck to production was Lucid's internal logistics issues (*see* §II.D), as Defendants conceded at the end of the Class Period. ¶515. Indeed, multiple FEs confirmed that **90% of the delays** resulted from Warehouse logistics problems. ¶¶246, 282, 289, 321, 356; *see also* Order at 25 (statements misleading because they "concealed that Lucid's own operational failings" were delaying production). More fundamentally, "statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). Thus, even if it was literally true that supply chain issues were having some impact on production, Defendants' statements were still misleading. *See Forescout*, 63 F.4th at 770 (concealing "significant cause of the missed revenue guidance" actionable "even if [other] conditions were also a factor"); *Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at *10-11 (C.D. Cal. July 3, 2023) (statement misleading even though "technically accurate" because it "focused on one driver of Rivian's negative gross profits while omitting another significant driver").

*Second*, Defendants claim that Plaintiff "relies primarily on Rawlinson's visits to the Warehouse" to establish Rawlinson's knowledge of Lucid's logistics issues. MTD 9. To start, "knowledge" is not a prerequisite to pleading falsity.[7] Where, as here, statements are misleading by omission, Plaintiff need only plead that they "create an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." Order at 21. Allegations demonstrating that Defendants withheld the cause of 90% of Lucid's production delays do just that. ¶¶246, 282, 289, 321, 356.[8] In all events, Defendants ignore the myriad other facts establishing Rawlinson's knowledge of internal logistics issues and their production impact, including FE-1's direct conversations informing him of the issues, Rawlinson's attendance at meetings where they were discussed, and Rawlinson's own admission that he worked "night and day" throughout 2022 to resolve the logistics problems, which makes clear that he was aware of their scope and

---

[7]     Even for scienter—the mental state element—deliberate recklessness suffices. *See infra* §IV.B.
[8]     Defendants' contention that Plaintiff must show that Rawlinson knew that "his statements about the impact of supply chain challenges on production were <u>false</u> when made" (MTD 9), mischaracterizes the Order and overlooks that the Delay Statements address the reasons for Lucid's delayed production, not merely "the impact of supply chain challenges," and were misleading by omission, not "false" by misrepresentation.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

impact. *See* §§II.D and II.E. Rawlinson's Logistics Admission also refutes any notion that global supply chain issues were the primary cause of Lucid's production delays, as working "night and day" at Lucid's Plant would do nothing to rectify the global supply chain or "COVID lockdowns in China." ¶¶431, 456.

*Third*, as discussed below in §IV.A.3, while Defendants claim that they earlier disclosed Lucid's internal logistics problems (MTD 10), they point only to the *same* boilerplate hypothetical risk disclosures that this Court already rejected as inadequate. *See* Order at 28-30. *Fourth*, Defendants' attacks on FE-11 and FE-12 (MTD 10) miss the mark. Both made clear that the internal logistics issues impeding production were discussed in significant detail in daily meetings, the whole purpose of which was to feed information to Rawlinson at daily 8 a.m. meetings. *See* §II.E. In any case, accepting Defendants' position that Rawlinson lacked knowledge of Lucid's logistics issues would require the implausible conclusion that he was blind to the precise logistics issues that he worked "throughout '22" to resolve. ¶¶305, 359, 456.[9]

### 2.    The Safe Harbor Does Not Protect Statements ##5-7, 9, 12, or 14-16

***Statements of Current or Historical Fact***. The safe harbor does not protect Defendants "when they make a materially false or misleading statement about current or past facts, and combine that statement with a forward-looking statement." Order at 27. Here, ##6, 7, 9, and 16 included current and/or historical facts. *See* ¶¶412 (#6: reduced production "reflects the extraordinary supply chain and logistics challenges we've encountered"), 414 (#7: "[O]ur production has been and indeed continued to be impacted by supply chain challenges."), 417 (#9: "supply chain challenges" attributable to "a small handful of suppliers" caused reduced production), 440 (#16: "We're facing global supply chain challenges[.]"); *see also* PX A. There is no safe harbor protection for these statements that convey "information about current or past facts" (Order at 27), each of which was misleading when made. *See* §IV.A.1.

***Lucid's Putative Cautionary Language Was Not Meaningful***. Any forward-looking statement was not accompanied by meaningful cautionary statements, which "must discredit the [allegedly misleading statements] so obviously that the risk of real deception drops to nil." Order at 28. For "mixed" statements, like ##6, 7, 9, 14 and 16, "it is likely that no cautionary language—short of an outright admission of the false or misleading nature of the non-forward-looking statement—would be sufficiently meaningful to

---

[9]    Rawlinson need not have "adopted" anyone's view on Lucid's logistics, as he worked throughout 2022 trying to fix the problems, and represented that he was still doing so on August 3, 2022. ¶516.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

qualify the statement for the safe harbor." *Quality Sys.*, 865 F.3d at 1146-47. Here, Defendants point only to the *same* putative cautions discussed in their prior briefing. MTD 4 (citing ECF 83 at 3-5 for Lucid's risk disclosures); *id.*, at 16 (pointing to Risk Factors in "Exs. 1-3"); *see also* ECF 83-2, 83-3, and 83-4 and ECF 121-1, 121-2, and 121-3 (each attaching the exact same pages of "Risk Factors" from Lucid's 3Q21 Form 10-Q, Q4 2021 Form 10-K, and 1Q22 Form 10-Q, respectively). Defendants also argued in Court that these same risk disclosures rendered any forward-looking statement inactionable. ECF 102 at 8:1-10:21, 15:2-16:2, 17:3-9, 37:15-21. After considering Defendants' contentions that these *same warnings* comprised "meaningful" cautionary language, the Court disagreed. *See* Order at 29 (cautions not meaningful because "disclosures are couched in terms of hypotheticals rather than the concrete risks that Lead Plaintiff alleges Rawlinson knew had materialized"). This holding applies with equal force here.

Defendants' putative cautionary language remains inadequate because it identified as hypothetical risks that had already materialized and were currently hampering production. *See* §§II.D and II.E; *see also Forescout*, 63 F.4th at 781 ("[C]autionary language is not 'meaningful' if it discusses as a mere possibility a risk that has already materialized."). As this Court held, none of Lucid's purported cautions warned of the Lucid-specific internal issues actively depressing production. *See* Order at 28-30.[10] Moreover, when issuing the Reduced 2022 Guidance, Defendants pointed only to global supply chain issues, saying nothing about Lucid's internal issues responsible for 90% of the ongoing production delays. ¶¶282, 321, 356, 410-19. Thus, Defendants' cautions were not meaningful. *See* Order at 28-30; *see also Weston*, 669 F. Supp. 3d at 879 (cautions "inadequate" because they did not disclose that risks "had already come to fruition").[11]

***Defendants Had Actual Knowledge That Their Statements Were False or Misleading***. There is also no safe harbor for any forward-looking statement because Defendants "made these statements while in possession of facts that contradicted them." Order at 28 n.16. The AC adequately alleges that Defendants knew throughout the Class Period that Lucid would miss its 2022 Guidance and Reduced 2022 Guidance

---

[10]     Defendants' cases (MTD 17) are not contrary. *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 932 (N.D. Cal. 2017) (cautions could be inadequate "if a company were to warn of the potential deterioration" of a business line, when "that line of business had already deteriorated"). In *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021), the plaintiffs "did not directly challenge the adequacy of Tesla's cautionary statements." The panel explained, in footnote dicta, that Tesla's cautionary language was "detailed and specific," but did not consider whether the language was inadequate because the risks it warned of were having a current impact. *Id.* at 1193 n.3.
[11]     In *Kipling v. Flex Ltd.*, 2020 WL 2793463 (N.D. Cal. May 29, 2020) (MTD 17), the plaintiffs did not argue that current risks were framed hypothetically.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

based upon its own logistical issues, foreclosing any reasonable basis for issuing and reiterating that guidance. *See, e.g.*, *Roberts*, 2020 WL 2042244, at *10 (allegations showing "defendants did not have a reasonable basis" demonstrate actual knowledge); *see* §IV.B.

### 3.    Statements ##3 and 4 Remain Actionable

Defendants ask the Court to reconsider its prior decision sustaining ##3 and 4 (##4 and 5 in the Order). MTD 11-14; *see* Order at 21-25. While Defendants urge the Court to revisit the "context" for these statements, such "context" has been fixed and immutable since November 2021. Defendants cite nothing to support their accusation that the Court failed to consider this "context" in its prior decision, and fail to cite any new allegation in the AC that bears upon the Court's prior decision sustaining ##3 or 4. The Court should reject Defendants' baseless relitigation effort.

Even if the Court entertains Defendants' unfounded reconsideration request, their arguments fail. In **#3**, Rawlinson misled investors by claiming that Lucid was poised to produce 34,000 cars per year "[a]s soon as we can get [] quality parts to the line." ¶404. The Court appropriately determined that this statement gave the impression that Lucid "was ready to operate at the capacity of its manufacturing facility" once supply chain issues cleared, while concealing all of the Company's unique logistics issues hampering production. Order at 21. More than three years after Rawlinson made #3, Defendants foist a new interpretation, claiming that Rawlinson was actually disclosing the precise Lucid-specific logistics issues that the Court correctly determined #3 concealed. MTD 12. The Court did not previously "misinterpret[]" #3, as Defendants claim. *Id*. Rather, Defendants *never raised* their current interpretation of #3 (ECF 83 at 8-9), and that new reading only confirms Rawlinson's scienter because he could not disclose facts he did not know. Defendants, however, failed to flag *any* statement, let alone #3, when this Court pressed them to identify a pre-August 2022 disclosure of Lucid's internal logistics problems. *See* ECF 102 at 8:15-9:25.[12] At most, Defendants now raise a factual argument that cannot be resolved at this stage. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1132 (N.D. Cal. 2020) ("[T]he Court may not resolve any disputes about the actual meaning of [defendant's] statement in this procedural posture.").

In **#4**, Rawlinson responded to Cramer's question, which referenced semiconductors as well as "***all***

---

[12]    As here (MTD 12-13), Defendants referenced only Lucid's risk disclosures. ECF 102 at 9:7-25. Those same disclosures are inadequate for the reasons identified in §IV.A.2. *See* Order at 28-30.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

*the things that are plaguing every other company in the automotive business*." ¶¶405-06. The Court correctly concluded that Rawlinson's answer, pointing to "today's supply chain shortages that the entire industry is facing," was misleading because he "concealed that Lucid's own internal operational failings had materialized." Order at 25. Defendants now posit that the question and answer referred *only* to "the 2021 global semiconductor shortage." MTD 13. This reading is not only untenable on the face of the exchange, but it is also *not* the subject of Plaintiff's claim. ¶408 (identifying "supply chain shortages that the entire industry is facing" as the misleading portion of #4). At best, and consistent with the Court's decision, Rawlinson's response, highlighting that Lucid was "vulnerable" to supply chain shortages while saying nothing of Lucid's internal logistics issues, was actionably misleading.[13] *See Miller*, 519 F.3d at 886; *Macquarie Infrastructure Corp. v. Moab Partners*, *L.P.*, 601 U.S. 257, 263-64 (2024) ("half-truths" mislead investors "by saying one thing and holding back another").

### 4.    No Misstatement Is Immaterial Puffery or Inactionable Opinion

Defendants' attempt to cast ##8, 9, and 12 as immaterial puffery fails. MTD 17-19. *First*, the challenged portions of #8 ("we could have chosen to build faster") and #12 ("Production volume outlook for 2022 remains on track[.]") concern Lucid's production rate—an objectively verifiable fact that *Lucid tracked and discussed every day*. ¶¶31, 312-21, 363-65, 450, 459; *see also, e.g.*, *Meta Platforms*, 2024 WL 4353049, at *6 ("specific and testable characteristic[s]" not puffery); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at *12 (C.D. Cal. May 31, 2017) (facts "capable of objective verification" not puffery). Rawlinson's bold claim in #8 that Lucid could have produced more cars but for quality concerns and Defendants' representation in #12 that production "remains on track" to meet the Reduced Guidance[14] are actionable because each directly "contravened the unflattering facts" existing at the time, including that Lucid's internal logistics problems forestalled mass production (*see* §II.D), and

---

[13]    Defendants' suggestion that there is no connection between Rawlinson's reference to "supply chain shortages" and Lucid's production rate (MTD 13) is meritless. The question addressed a "semiconductor shortage problem," "labor problem," and "all the things that are *plaguing* every other company in the automotive business"—each of which concerned vehicle production. ¶¶405-06. *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017), MTD 14, is inapposite for this reason.

[14]    Defendants' cases (MTD 19) do not address a specific, quantified target. *See Kipling*, 2020 WL 2793463, at *14 ("amorphous" "strategy remains firmly on track" and "unspecified 'innovations' were above expectations"); *In re Wet Seal, Inc. Sec. Litig*, 518 F. Supp. 2d 1148, 1167 (C.D. Cal. 2007) ("personally very excited" and "position[ed] [] well for the new year"); *In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 854 n.8 (N.D. Cal. 2017) ("improved financial performance").

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

that corresponding vehicle production missed all weekly goals (*see* §II.E). *Forescout*, 63 F.4th at 770.[15]

Ignoring the concrete factual representation that "the second half of the year, we'll see a significant uptake [in production]," Defendants claim that #9 is puffery merely because it elsewhere contains the words "optimistic" and "quality." MTD 18. Rawlinson's response in #9 to specific questions about Lucid's production rate amid supply chain constraints, however, represented that Lucid was poised to ramp up production once the supply chain improved, while concealing that Lucid's internal logistics issues were preventing mass production (*see* §II.D), as Defendants belatedly revealed on August 3 (*see* §II.G). *See* Order at 21-22 (representation that production would ramp once supply chain cleared was misleading).

*Second*, when considered in context, none of ##8, 9, or 12 is puffery, as each concerned producing the Air, Lucid's sole product and source of more than 80% of its revenue. ¶¶77, 93; *see also* ¶¶101-03 (ability to mass produce the Air was biggest factor driving Lucid's stock price); *see, e.g.*, Order at 32 (statements that "convey concrete facts about matters affecting the core of Lucid's business" not puffery). Here, ##8, 9, and 12 positively portrayed Lucid's vehicle production rate—concealing, among other things, that Lucid's internal logistics were negatively impacting production (*see* §II.D), and that, as a result, Lucid had consistently missed its production goals (*see* §II.E). These statements misled investors about the most important aspect of Lucid's business, and are not mere puffery. *See* Order at 32 ("[E]ven general statements of optimism, when taken in context, may be misleading when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly.").

Defendants fail to address the context for ##8, 9, and 12, and obscure it by extracting words from the statements and deeming those words "puffery." MTD 18 (challenging "optimistic" and "quality" from #9); *id.* at 19 (targeting "on track" in isolation from the rest of #12).[16] As it has before, the Court should reject this tactic. *See Meta Platforms*, 2024 WL 4353049, at *7 (discrediting puffery arguments pointing only to portions of statements while ignoring other portions stating concrete facts). Defendants likewise

---

[15] In contrast, Defendants' cases (MTD 18) involve vague and unverifiable claims. *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1063 (N.D. Cal. 2012) ("demand metrics were strong," "good underlying market fundamentals," and "solid operating model"); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) ("[w]e're highly optimistic about the US" and "[o]verall, I'm very excited about the business"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("superb, uncompromising quality" and "faster, more powerful, and more innovative"), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

[16] Supporting materiality, #9 responded to an analyst's question. *See Forescout*, 63 F.4th at 771.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

characterize #8 as a "vague, optimistic assertion" by divorcing Rawlinson's statement ("Indeed, we could have chosen to build faster") from its context. MTD 18; *see also* PX A. Rawlinson made #8 when announcing the Reduced 2022 Guidance and celebrating "deep deliveries" amid "extraordinary supply chain and supply quality challenges" (¶415), giving the false impression that Lucid deliberately elected to build slowly, while concealing that Lucid's internal logistics problems prevented it from building any faster. *See* §§II. D and II.E. Statement #8 is actionable as a Delay Statement. *See* §IV.A.1.

Finally, in contending that certain portions of #9 are inactionable opinion (MTD 17-18), Defendants ignore the portion of #9 asserting as a *fact* that in "the second half of the year, **we'll see a significant uptake** [in production]." ¶417; *see* Order at 31 (statements not opinions when they "express certainty about specific issues and their effects on Lucid's operations").[17] Even if any portion of #9 is an opinion, it is actionable because it was "rendered misleading by the omission of a material fact." *Forescout*, 63 F.4th at 764; *see also* Order at 31 (similar). Rawlinson explicitly premised this statement on transient issues with "a small handful of suppliers" purportedly impeding production, while omitting that, regardless, Lucid's internal issues would still prevent it from ramping production. ¶¶417, 424. Defendants challenge #9 alongside the other Delay Statements (MTD 9-10), and #9 is actionable for omitting material facts. *See* §IV.A.1.

**B.    Plaintiff's Allegations Raise a Strong Inference of Scienter**

A plaintiff may plead scienter by showing either "intent to deceive, manipulate, or defraud," or "deliberate recklessness." *Scheuneman*, 840 F.3d at 705. Deliberate recklessness is pled when one "has reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort." *Reese*, 747 F.3d at 569. For scienter, a court must assess all of the facts "**collectively**." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007). A plaintiff "need not prove its case at the outset" but only must "provide a narrative of fraud—facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016).

***Projection Statements***: Plaintiff pleads scienter for the Projection Statements (##5-7, 12, 14-16). Just months before announcing the Reduced 2022 Guidance, Rawlinson made his Production Admission

---

[17]    The securities analyst asked Rawlinson "[a] couple of questions," one of which sought comment on "how to think about the cadence of improvement in production throughout the year." ¶416. Defendants fail to address this question or Rawlinson's answer to it. MTD 18.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

that Lucid would make less than 10,000 cars in 2022. As the AC pleads in detail, the logistics issues impeding production only worsened during the Class Period, which Rawlinson knew from, among other things, his presence at Lucid's production facility "night and day" throughout 2022. *See* §II.D. Unsurprisingly then, multiple FEs confirm that during 2022, Lucid missed its daily and weekly internal production targets, which Rawlinson knew from the daily 8 a.m. meetings. *See* §II.E.

Citing *Wochos*, Defendants contend that Plaintiff must establish that Rawlinson knew it was "impossible to achieve" guidance. MTD 23. That is not the law. The *Wochos* panel made clear that it did "not reach the issue[] of scienter," rendering it irrelevant to evaluating scienter. 985 F.3d at 1188; *see also In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *8 n.5 (N.D. Cal. Jan. 6, 2022) (rejecting defendants' "heavy reliance" on *Wochos* because "*Wochos* did not address the actual-knowledge prong"). Rather, courts in this Circuit consistently find scienter alleged for forward-looking statements regardless of whether the defendant was certain that projections would not be met.[18] For example, in *Forescout*, actual knowledge was pled for defendants' claim that they "look forward to completing our pending transaction with Advent" because defendant "was aware of Advent's reconsideration of the merger." 63 F.4th at 781. In so holding, the Ninth Circuit reasoned that even though Advent's termination of the "merger proceedings had not yet become an absolute certainty," defendants "were aware of a significant likelihood" that the deal would not close, which sufficed to plead scienter. *Id.* at 779-81.[19] Here, Rawlinson knew there was, at least, a significant likelihood that Lucid would miss the Reduced 2022 Guidance, given his recent Production Admission and his contemporaneous knowledge that Lucid's internal issues persisted, with Lucid missing all of its weekly production goals. *See* §§II.D and II.E. Underscoring how severe Lucid's logistics problems were, they continued to forestall production eight months into 2022. ¶¶385-94, 509-37.

The AC need not plead that Rawlinson "adopted" others' views about the Reduced 2022 Guidance (MTD 22-23), as he maintained *his own view* that Lucid would produce fewer than 10,000 cars in 2022,

---

[18]    These authorities also apply to non-forward-looking statements, for which allegations showing deliberate reckless are sufficient. *See Scheuneman*, 840 F.3d at 705.

[19]    *See also Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (actual knowledge pled where defendants "knew of reliable information indicating that the [product] was unlikely to succeed"); *In re Illumina, Inc. Sec. Litig.*, 2018 WL 500990, at *5 (S.D. Cal. Jan. 22, 2018) (rejecting argument that defendants had to know for certain they would miss projections); *Weston*, 669 F. Supp. 3d at 880 (actual knowledge pled through allegations from FEs that demand was waning, and that the defendants had access to demand data); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1130 (C.D. Cal. 2005) (actual knowledge pled where the defendants knew "problems could delay or jeopardize" drug approval).

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

and knew from working "night and day" at the Plant in 2022 that no circumstances emerged to undermine his view.[20] *See* §§II.D and II.E. Others' conclusions that Lucid could not produce half of the Reduced 2022 Guidance supports that Rawlinson believed the Production Admission throughout 2022. ¶¶317-18.

***Delay Statements***: Plaintiff also pleads scienter for the Delay Statements (##6-7, 9-11, 13, 16). These statements attributed Lucid's slow production to exogenous factors, including "global supply chain challenges" impacting "all the auto industry" and "Covid lockdowns in China," while concealing that "Lucid's own internal operational failings had materialized." Order at 24-25; *see also id*. at 35 (by November 2021, Rawlinson "was aware of specific internal failings that impeded Lucid's ability to make its only product"). As set forth in §II.D, the AC pleads myriad facts demonstrating that Lucid's internal logistics problems only worsened during 2022, causing 90% of the production delays. ¶¶282, 321, 356.

For example, Rawlinson confirmed his knowledge that ongoing internal logistics issues hampered 2022 production, admitting that he was at the Plant "night and day" working "crazy hours" "throughout '22" to resolve those precise issues. ¶¶305, 359, 456; *see also* ¶516 (August 3, 2022: "[M]y relentless focus is . . . right here in Arizona in helping resolving our logistics challenges[.]"). Although Defendants ignore the Logistics Admission, Rawlinson's constant presence at the Plant "as part of a team" struggling to resolve Lucid's logistics issues undoubtedly informed him of the specific problems and their impact. *See Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 953, 970 (N.D. Cal. 2014) (scienter pled where defendants knew of or recklessly disregarded "pervasive manufacturing and QC deficiencies"). Evidencing this, Rawlinson devised his "Warehouse on Wheels" plan in January 2022 and instituted seven-day work weeks, which failed to solve the problems. ¶¶320, 353. It is implausible that Rawlinson would leave California to work around the clock at the Plant, address logistics issues at the Warehouse (including costly 80-hour work weeks), and attempt other internal fixes (¶¶195, 233-36, 251, 353, 363, 463), if—as he told investors—the primary production bottleneck was the *global* supply chain. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (scienter evaluated "with a practical and common-sense perspective").

Unable to contend that Rawlinson was ignorant of the logistics issues he worked "night and day"

---

[20] For this reason, *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *18 (N.D. Cal. Mar. 31, 2022), (MTD 23) is inapposite—Rawlinson's view suffices. *See Felipe*, 2024 WL 1380802, at *12 (awareness of problems six months earlier pled actual knowledge for launch date projection); *In re BP Prudhoe Bay Royalty Tr. Sec. Litig.*, 2007 WL 3171435, at *7 (W.D. Wash. Oct. 26, 2007) (actual knowledge pled where "[d]efendants were aware of the numerous red flags . . . months, if not years, before" projections).

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

"throughout '22" to resolve, Defendants cherry pick allegations out of context and label them vague, while ignoring most of Plaintiff's detailed allegations. For example, they argue that the FE accounts confirming logistics issues throughout their respective tenures are "temporally vague." MTD 22. Consistent with the Logistics Admission, however, the FEs uniformly report that Lucid's logistics problems stalling production continued during the brief six months between Defendants' November 2021 and May 2022 statements.[21] Nor are allegations that in 2022 Rawlinson received *daily* reports discussing logistics problems (¶245), attended *daily* 8 a.m. meetings where logistics problems were discussed (¶364), or witnessed logistics issues at the Warehouse at specific times (¶¶232, 235, 238-44) "temporally vague." MTD 21-23.

Defendants' request that the Court disregard certain allegations as "hearsay" is meritless. MTD 24. For one, "that a[n FE] reports hearsay does not automatically disqualify his statement from consideration in the scienter calculus." *Okla. Police Pension Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208-09 (9th Cir. 2016) (reversing dismissal where FE allegation was improperly disregarded as hearsay). Regardless, the FE accounts are "sufficiently reliable, plausible, [and] coherent." *Lloyd*, 811 F.3d at 1208. For instance, FE-11 reported that, throughout his tenure (to late 2022), he attended daily 7 a.m. meetings headed by logistics VPs, including Ludwig, where Lucid's logistics issues and their negative impact on production were discussed. ¶¶312-17. FE-12 corroborates these allegations. ¶¶320-21. FE-11 also said the whole purpose of the 7 a.m. meetings was for the VPs to collect and share information with Rawlinson at the daily 8 a.m. meetings. ¶313.[22]

***There Is No Basis to Discredit the FE Allegations***: Courts credit FE accounts if the FEs are described with "sufficient particularity" to support "the probability that a person in the position occupied by the source would possess the information alleged." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *see also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (accounts accepted if it is "plausible" that FE "would know, or could reasonably deduce," information attributed to them). In *Daou*, plaintiffs adequately described FEs "with a large degree of specificity" where they "number[ed] each witness and describ[ed] his or her job description and responsibilities," and "[i]n some instances . . .

---

[21]    In *SolarCity*, 274 F. Supp. 3d at 1010 (MTD 22), plaintiff did not tie allegations to a "time frame."
[22]    Defendants' authorities (MTD 23-24) are off-point. In *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 857 (N.D. Cal. 2019), "credibility concerns" led the court to discount FE allegations. In *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *26 n.16 (N.D. Cal. Dec. 9, 2022), the FE allegations failed "to provide any context" explaining how FEs learned information.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

provide[d] the witnesses' exact title and to which [] executive the witness reported." 411 F.3d at 1016. Here, the AC alleges each FE's job tenure, description, and responsibilities, and provides reporting lines and job titles for some, which adequately alleges the basis for each FE's knowledge. ¶¶62-73. For instance, FE-2 worked in logistics supervisory roles in the Warehouse, including "coordinat[ing] parts deliveries, receiving, inventory, purchase orders, shipping," "supervis[ing] . . . [logistics] employees and contractors," and "implement[ing] [] Lucid's inventory management system," which makes clear how FE-2 knew about Lucid's issues with, for example, parts deliveries and inventory management systems. ¶63. The basis for the other FEs' knowledge is also adequately pled. ¶¶62, 64-73.[23]

Defendants wrongly contend that certain FE accounts are unreliable because their tenures did not span the entire Class Period. MTD 20. The Ninth Circuit, however, regularly credits allegations from FEs who left before the applicable class period ended. *See, e.g.*, *Quality Sys.*, 865 F.3d at 1145 (crediting FE who left a year before class period began).[24] Moreover, the facts that FEs who left before the end of the short Class Period reported are corroborated by others, who make clear that Lucid's logistics and production problems persisted throughout the Class Period. For example, FE-2 said that Lucid's inventory management system was still dysfunctional when he left at the end of 2021. ¶¶162, 246. FEs 3, 4, 5, 8, and 9 confirm these problems (¶¶157-58, 162, 166-67), and multiple FEs indicated that the issues continued well into 2022 (¶¶158 (FE-9: problems still existed in April 2022), 162 (FE-4: problems continued through mid-2022), *id.* (FE-3: problems continued through late summer 2022)). FE-6 also reported that Lucid's logistics issues negatively affected production and caused line stoppages during his tenure. ¶280. Other FEs confirmed these facts.[25] Defendants' August 2022 admissions that Lucid's logistics issues persisted and were the primary production bottleneck corroborate these FE accounts. ¶¶385-94, 509-37.

---

[23] By contrast (MTD 20-21), in *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053 (N.D. Cal. 2019), "a description of the CWs' responsibilities [wa]s missing for each CW" and in *Weston,* the plaintiffs failed to plead certain FEs' responsibilities, alleging only that one was "an account executive" and another was "formerly employed by DocuSign." 669 F. Supp. 3d at 882.

[24] *See also E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 939 (9th Cir 2023) (scienter allegations "relevant and probative" even though FE "quit working at NVIDIA at the beginning of the Class Period"); *Roberts*, 2020 WL 2042244, at *11 ("That none of the CWs was employed at Zuora during the entire Class Period does not in itself render their statements unreliable[.]").

[25] ¶¶282 (FE-8: 90% of Lucid's production issues caused by internal logistics), 293 (FE-1: Warehouse disarray caused production stoppages), 295 (FE-3: logistics issues shut down production every day), 321 (FE-12: 90% of the time, Lucid internally blamed missed production on logistics). By contrast, in *Inchen Huang v. Higgins*, 2019 WL 1245136, at *1, *7 (N.D. Cal. Mar. 18, 2019) (MTD 20) the sole FE left 17 months before the class period ended.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

Citing *Weston*, Defendants also contend that the FE descriptions are insufficient because they lack exact employment dates. But the *Weston* court specifically noted that it was "not persuaded by DocuSign's temporal argument" because, "as alleged, all but one of the confidential witnesses were clearly employed by the company during the class period." 669 F. Supp. 3d at 882 n.7. Here, too, each FE worked at Lucid during the Class Period. ¶¶62-73.[26] In all events, courts regularly credit similar employment allegations. *See, e.g.*, *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2024 WL 3579322, at *3, *10 (N.D. Cal. Jul. 29, 2024) (crediting FE who worked at Wells Fargo "from 2014 to mid-2022"). In sum, "the level of detail of the [FE] statements, the number of [FEs], and the consistency between the [FE]'s statements of subjective opinion and those of verifiable fact . . . tell a reasonably plausible story about [Lucid's] state of affairs," and should be credited. *Forescout*, 63 F.4th at 772.

***Core Operations***: The core operations doctrine provides exceptions to the "general" rule that "management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *S. Ferry*, 542 F.3d at 784-85. Several exceptions apply here. *First*, under the "absurdity" exception, allegations regarding management's role—standing alone—plead scienter "where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge." *Id.* at 786. *Berson*, 527 F.3d at 987-89, involved allegations that defendants concealed stop-work orders, and the Ninth Circuit found scienter pled because, as the company's top officers, it was absurd to believe defendants were unaware of an issue that had a devastating impact on revenue. *See also Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634, at *3 (9th Cir. Dec. 20, 2024) ("absurdity" test met where problems "threatened more than half of Snap's revenue"). Here, the information at issue—problems in Lucid's sole Warehouse and Plant plaguing production of its sole product generating nearly all of its revenue—was so critical that it would be absurd to suggest Rawlinson was unaware. *See Mulligan*, 36 F. Supp. 3d at 970 ("absurd to think" CEO "would be unaware of substandard, non-compliant conditions pervading [] company's manufacturing [division]").

*Second*, under the "actual access" exception, allegations regarding management's role in a company "independently satisfy the PSLRA where they are particular and suggest that defendants had actual access

---

26   Though FE-12 was a contractor, he oversaw over 200 personnel at the Warehouse. ¶73.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

to the disputed information." *S. Ferry*, 542 F.3d at 785-86. Here, Rawlinson's Logistics Admission—that he worked at the Plant "night and day" "throughout '22" to try to resolve Lucid's logistics issues impeding production (¶¶305, 359, 456)—is textbook "actual access," and comprises the precise "specific admission[] by executives of their involvement in a company's core operation" that Defendants concede is adequate. MTD 24.[27] In fact, Rawlinson's Logistics Admission amplifies his counsel's concession that "Rawlinson, came to the factory to try and really focus people on addressing these issues," which the Court credited in previously concluding the core operations doctrine applied. Order at 35.

***Rawlinson's Motive***: Defendants provide no basis for the Court to "reassess" its holding that Plaintiff's motive allegations support scienter. MTD 25. The Court correctly held that these allegations support scienter "irrespective of whether Rawlinson realized any profit from the stock options he received." Order at 34; *see also No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) (motive to inflate stock to receive options supports scienter). Rawlinson did not "defraud[] himself" (MTD at 25), as he did not *purchase* Lucid stock at inflated prices. Rather, he benefited from the inflation when he received millions of Lucid options. ¶¶117-18, 126.[28]

### C.     Plaintiff Adequately Pleads Section 20(a) Claims

Defendants do not dispute "control," and, as set forth above, the AC sufficiently pleads a primary violation of §10(b). Accordingly, Plaintiff's §20(a) claim is adequately alleged.

## V.     <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny the MTD. Should the Court deem any portion of the AC insufficient, Plaintiff respectfully requests leave to amend. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

---

[27] In *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021), MTD 24, by contrast, the plaintiffs pled no admissions that the defendants were involved in the report at issue.

[28] Plaintiff does not object to Defendants' request that the Court take judicial notice of their Exhibits 1-8 (ECF 122) to the extent Defendants rely on those documents only to show "certain representations were made to the market." Order at 7.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

Dated: February 5, 2025                    Respectfully submitted,


**KESSLER TOPAZ MELTZER
    & CHECK, LLP**

*/s/ Stacey M. Kaplan*
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
Max S.S. Johnson (Bar No. 348828)
(mjohnson@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

        -and-

Gregory M. Castaldo (admitted *pro hac vice*)
(gcastaldo@ktmc.com)
Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
(jwhitman@ktmc.com)
Joshua A. Materese (admitted *pro hac vice*)
(jmaterese@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Counsel for Lead Plaintiff Sjunde AP-Fonden and
Lead Counsel for the Putative Class*