Sara B. Brody (SBN 130222)
sbrody@sidley.com
Stephen Chang (SBN 312580)
stephen.chang@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Andrew W. Stern (*pro hac vice*)
astern@sidley.com
James O. Heyworth (*pro hac vice*)
jheyworth@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE LUCID GROUP, INC. SECURITIES LITIGATION | Case No. 3:22-cv-02094-AMO |
| | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT** |
| | Date: May 1, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 10 – 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |
| | <u>CLASS ACTION</u> |
| | Amended Complaint Filed: 9/20/2024 |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

I.      CLAIMS RELATING TO STATEMENTS 3-16 SHOULD BE DISMISSED. ......................2

        A.      Plaintiff Does Not Plead that the 2022 Statements Were False or Misleading. ............2

                1.      Plaintiff Misconstrues the Meaning of "Contemporaneous." ............................2

                2.      Plaintiff Fails to Plead a Basis to Conclude that the 2022 Production Target
                        Statements Were False When Made. ...............................................................3

                3.      Plaintiff Fails to Plead the 2022 Production Delay Statements Were False or
                        Misleading. ....................................................................................................6

        B.      The Court Should Also Dismiss the Claims Based on Statements 3 and 4. .................9

        C.      Certain 2022 Statements Are Protected Under the PSLRA's Safe Harbor. ................10

        D.      Statements 8, 9, and 12 Are Non-Actionable Puffery or Opinion. .............................12

II.     PLAINTIFF FAILS TO PLEAD SCIENTER. .......................................................................13

        A.      Plaintiff Fails to Establish Scienter Under *Zucco*. ........................................................13

                1.      Plaintiff Fails to Plead the Reliability of Its FEs Under *Zucco*.......................13

                2.      Plaintiff Does Not Plead a Strong Inference of Scienter Under *Zucco*............14

        B.      Plaintiff's Motive Allegations Do Not Support Scienter. ...........................................15

CONCLUSION...................................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Affirm Holdings, Inc. Sec. Litig.*,
2024 WL 3955453 (N.D. Cal. Aug. 26, 2024) ..........................................................................6

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ...............................................................................................8, 10

*Crews v. Rivian Auto., Inc.*,
2023 WL 4361098 (C.D. Cal. July 3, 2023) ............................................................................8

*In re Facebook Sec. Litig.*,
87 F. 4th 934 (9th Cir. 2023) ..................................................................................................3

*Felipe v. Playstudios, Inc.*,
2024 WL 1380802 (D. Nev. Mar. 31, 2014) ............................................................................3

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ......................................................................... 2-3

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ..................................................................................12

*Gillette Co. v. Norelco Consumer Prods. Co.*,
946 F. Supp. 115 (D. Mass. 1996) ..........................................................................................12

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .......................................................................................8, 13, 14

*Jaszczyszyn v. SunPower Corp.*,
2024 WL 3463348 (N.D. Cal. July 17, 2024) ........................................................................12

*Lamontagne v. Tesla, Inc.*,
2024 WL 4353010 (N.D. Cal. Sept. 30, 2024) ..........................................................11, 12, 15

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ...............................................................................................15

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)....................................................................................................................9

*Miller v. Thane Int'l, Inc.*
519 F.3d 879 (9th Cir. 2008) ..................................................................................................10

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT,
CASE NO. 3:22-CV-02094-AMO

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
  2016 WL 7475555 (N.D. Cal. Dec. 29, 2016)................................................................................4

*Nursing Home Pension Fund Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ......................................................................................................3

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) ...............................................................................................15

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020)..............................................................................15

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..................................................................................................3, 14

*In re QuantumScape Sec. Class Action Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022) ........................................................................................14

*Qureshi v. Countrywide Home Loans, Inc.*,
  2010 WL 841669 (N.D. Cal. Mar. 10, 2010)..........................................................................10, 13

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) .....................................................................................................10

*Roberts v. Zuora, Inc.*,
  2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ...............................................................................3

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .........................................................................................................1

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
  485 F. Supp. 3d 1113 (N.D. Cal. 2020) ........................................................................................9

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................................... 10-11

*Stubblefield v. City of Novato*,
  2016 WL 192539 (N.D. Cal. Jan. 15, 2016)..................................................................................4

*In re Talis Biomedical Corp. Sec. Litig.*,
  2022 WL 17551984 (N.D. Cal. Dec. 9, 2022)............................................................................5, 7

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) ........................................................................................15

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .......................................................................................................15

*Weston v. Docusign, Inc.*,
  669 F. Supp. 3d 849 (N.D. Cal. 2023) ..........................................................................................3

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT,
CASE NO. 3:22-CV-02094-AMO

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................................12

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ............................................................5, 11, 12, 14

*Zaidi v. Adamas Pharm., Inc.*,
    650 F. Supp. 3d 848 (N.D. Cal. Jan. 13, 2023)........................................................3

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .........................................................................13, 14

**Statutes**

15 U.S.C. § 78u-5(i)(1)(D) ...............................................................................10

**Other Authorities**

Black's Law Dictionary (12th ed. 2024)...........................................................2

Merriam Webster's Dictionary (11th ed. online) (visited Mar. 14, 2025).......................2

**<u>INTRODUCTION</u>**

During the 2021 to 2022 time period relevant to this action, Lucid was a young and growing company that had gone public less than one year earlier. Like other ambitious startups, Lucid set its sights high as it entered its complex and rapidly evolving industry, the then-nascent EV market. Lucid and its CEO, Peter Rawlinson, worked tirelessly to begin producing electric vehicles in 2021. But like many emerging companies, Lucid encountered unforeseen challenges in ramping up the production of its innovative vehicle, and struggled to meet its ambitious goals. But failing to meet stated expectations does not equal securities fraud. As the Ninth Circuit has observed, "[p]roblems and difficulties are the daily work of business people. That they exist does not make a lie out of any . . . alleged false statements." *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001). This is why, to plead a securities fraud claim, Plaintiff must allege *specifics*—facts tied to a particular moment in time, providing a basis to conclude both that a statement was false or misleading *and* that the speaker had the requisite state of mind when making the statement. This Court held Plaintiff to that standard when it previously dismissed all claims relating to the 2022 Statements. It should do so again.

Plaintiff's Opposition does nothing to cure the AC's failure to allege *contemporaneous* facts that, if true, would demonstrate falsity and an inference of scienter.[1] Plaintiff points to a collection of new (and old) allegations that all lack specificity in time and content. Plaintiff mischaracterizes the controlling law by placing the burden on *Defendants* to identify facts *dis*proving its allegations. Plaintiff also proposes an illogical definition of "contemporaneous" in an attempt to use alleged facts from 2021 to suggest statements made months later in 2022 were false or misleading. And Plaintiff does not adequately respond to Defendants' showing that no FE could have plausibly spoken to Rawlinson's state of mind when the 2022 Statements were made. For these and other reasons, the Court should again dismiss claims relating to the 2022 Statements.

The Motion also demonstrated that Statements 3 and 4, when viewed in context, are neither false nor misleading. The Opposition does not (and cannot) change this conclusion: these statements are Rawlinson's focused responses to specific questions about supply chain issues, as explained below.

Defendants' Motion established that the Court should limit this action to Statements 1 and 2.

---

[1] All terms have the meanings set forth in Defendants' Motion to Dismiss ("Motion"). ECF 120.

Plaintiff's Opposition only confirms this conclusion. Accordingly, this Court should grant Defendants' Motion and dismiss the claims relating to Statements 3-16.

## I.    CLAIMS RELATING TO STATEMENTS 3-16 SHOULD BE DISMISSED.

### A.    Plaintiff Does Not Plead that the 2022 Statements Were False or Misleading.

This Court previously dismissed all claims arising from the 2022 Statements. ECF 103 at 20, 24-25. It should do so again because (i) Plaintiff cannot redefine "contemporaneous" to tie allegations from November 2021 to statements made months later in 2022, and (ii) the AC fails to plead any *new* contemporaneous facts demonstrating the 2022 Statements were false or misleading *when made*.

### 1.    Plaintiff Misconstrues the Meaning of "Contemporaneous."

Plaintiff's Opposition begins with a flawed legal premise. It asks the Court to adopt a novel and illogical definition of "contemporaneous" to salvage its claims about the 2022 Statements. As discussed below, the Court should reject this definition, which is contrary to the ordinary meaning of the term, this Court's prior analysis, and relevant caselaw.

***First***, Merriam-Webster limits the term "existing" to facts happening "during the same time." ECF 123 at 17.[2] To interpret the term "contemporaneous" to "continue" indefinitely into the future, as Plaintiff urges, defies its ordinary meaning. *Id.* A contemporaneous fact "exists" at a particular point in time. *See* Contemporaneous Definition, Black's Law Dictionary (12th ed. 2024) ("Black's Law") ("Living, occurring, or existing *at the same time*.").

***Second***, Plaintiff ignores the Court's prior ruling that applied the correct definition of "contemporaneous," holding that FE-1 and FE-2's allegations between September 2021 and the first week of November 2021 could "*only be tied to Statements 1 and 2 made on November 15, 2021.*" ECF 103 at 19. In doing so, the Court correctly declined to extend the effect of allegations of falsity about statements made in the fall of 2021 to statements made months later in 2022. *See id.* Limiting the allegations of contemporaneous knowledge to a point in time is the correct approach and consistent with district precedent. *See, e.g.*, *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015) (CW1's account "not contemporaneous" when statements at issue were made "at least

---

[2] *See Contemporaneous*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/contemporaneous (last visited Mar. 14, 2025).

two to three months before" and "at least three months after" a "meeting in CW1's account.").

***Third***, Plaintiff plays fast and loose with caselaw in an attempt to redefine "contemporaneous." Most of Plaintiff's cited authorities lack substantive analysis of whether particular statements were sufficiently "contemporaneous" to show falsity, and/or are factually inapposite. *See, e.g.*, *Nursing Home Pension Fund Loc. 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) (did not address whether statements were sufficiently contemporaneous, and involved particularized and quantifiable facts on missed deals leading to projected shortfall); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (did not analyze whether statements, standing alone, were sufficiently contemporaneous; decision was based on numerous FE allegations *throughout* class period); *Weston v. Docusign, Inc.*, 669 F. Supp. 3d 849 (N.D. Cal. 2023) (did not address whether facts were contemporaneous); *In re Facebook Sec. Litig.*, 87 F. 4th 934, 949 (9th Cir. 2023) (same).[3]

The Court should again apply the ordinary meaning of the term "contemporaneous" to require knowledge "at the same time." Under this commonplace definition, Plaintiff cannot recycle facts from fall 2021 to allege the false or misleading nature of statements made months later in 2022. To proceed, Plaintiff was required to allege *contemporaneous* facts supporting a conclusion of falsity when the statements were made. As discussed below, the Opposition confirms Plaintiff again failed to do so.

**2. Plaintiff Fails to Plead a Basis to Conclude that the 2022 Production Target Statements Were False When Made.**

Plaintiff improperly attempts to shift to Defendants the burden of identifying facts demonstrating that they *did* believe their reduced production targets in 2022 were achievable. *See, e.g.*, ECF 123 at 17 (arguing that "[n]o facts support concluding that, at any point during the Class Period, Rawlinson's belief that Lucid would produce fewer than 10,000 cars in 2022 suddenly evaporated"). But this flips the legal standard. It is *Plaintiff* (not Defendants) who bears the burden to plead, with particularity, contemporaneous facts showing why *each* production target statement was false or

---

[3] *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *3, *9 (N.D. Cal. Apr. 28, 2020) and *Felipe v. Playstudios, Inc.*, 2024 WL 1380802, at *12 (D. Nev. Mar. 31, 2014) also contain no reasoned analysis on whether statements were sufficiently contemporaneous to demonstrate falsity. And *Zaidi v. Adamas Pharm., Inc.*, 650 F. Supp. 3d 848, 857 (N.D. Cal. Jan. 13, 2023), is particularly unhelpful to Plaintiff, who neglects to mention that the Court found the defendant COO lacked scienter because plaintiff failed to plead that the COO had ever received certain surveys in the "first-half" of 2017 that rendered false a statement made on August 8, 2017.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT, CASE NO. 3:22-CV-02094-AMO

misleading when made in 2022. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) ("Plaintiffs must…clearly allege with particularity why [each allegedly false or misleading] statement was false or misleading *at the time it was made.*").

Plaintiff fails to satisfy its burden. To begin, Plaintiff's vague allegations about the 2022 Statements lack the specificity on which the Court relied when it held that the prior complaint adequately pled falsity for two November 2021 statements. Most notably, the Court held that FE-2's allegation—*i.e.,* that, in October or early November 2021, Rawlinson stated privately that "Lucid would make less than 10,000 vehicles in 2022"—was sufficiently contemporaneous with the 2021 Statements.[4] ECF 103 at 18. Likewise, the Court credited FE-1's allegation that in September or November 2021 he told Rawlinson that the then-current 20,000 vehicle production goal could not be met and Rawlinson "reacted by nodding his head." *Id.* In stark contrast, *nothing* Plaintiff alleges in the AC (even as now mischaracterized in the Opposition) approaches this level of particularity. Instead, Plaintiff's allegations lack specificity in time and detail, and fail to provide a basis to conclude that the revised 12,000-14,000 vehicle target announced in February 2022 and reiterated in May 2022 was false or misleading at either time.

Nothing in the Opposition or the AC should change the Court's prior analysis. The Opposition leans heavily on the vague allegation that "Rawlinson also learned from the daily 8 a.m. meetings that Lucid never met its weekly production goals" (ECF 123 at 17), but this contention mischaracterizes the AC and does not support the conclusion Plaintiff attempts to draw. *See* AC ¶ 312 (Rawlinson "on occasion" attended 7:00 a.m. meetings, where production numbers were discussed; "two or three" times in total); *id.* ¶ 320 (Rawlinson "occasionally" attended "morning meetings"). Tacitly recognizing this, Plaintiff misleadingly attempts to ascribe to Rawlinson the contents of the 7:00 a.m. meetings, some of which allegedly were attended by an FE, by positing that VPs would "escalate" information discussed at the 7:00 a.m. meetings to the 8:00 a.m. meetings, which the FEs did *not* attend. AC ¶ 313. This is vague hearsay and speculation. *See infra* § II.A.2. The new AC allegations from FE-11 and FE-12 say nothing about specific meetings that took place on specific days or whether specific data

___

[4] This allegation is accepted as true only for the purposes of this Motion. *See Stubblefield v. City of Novato*, 2016 WL 192539, at *1 (N.D. Cal. Jan. 15, 2016) (Facts taken as true for a motion to dismiss should not "be interpreted as resolving any issue of fact that may be disputed at a later stage.").

4

was ever escalated to any meeting that Rawlinson actually attended (*see*, *e.g.*, AC ¶ 313 ("FE-11 knew *at certain times* that Rawlinson was aware of the issues discussed at the 7:00 a.m. meetings")), and they certainly do not suggest that this lower level employee or contractor ever directly expressed to Rawlinson any views on the feasibility of reaching the 12,000-14,000 vehicle target. The AC's introduction of FE-11 and FE-12 is legally irrelevant and should not change this Court's analysis.

Plaintiff's pleading deficiency is underscored by its failure to include specific details on the production data. Among other things, Plaintiff does not describe what data were available at either of these morning meetings that demonstrated that the revised 12,000-14,000 goal was unachievable as of February or May 2022. *See* AC ¶ 320 (describing a production "spreadsheet" that revealed "every day Lucid fell further and further behind"). Nor does the AC allege with particularity how the alleged missed daily or weekly goals factored into the overall revised 12,000-14,000 target. Generalized descriptions of a spreadsheet, offered without specificity as to the time of its creation or content—and without any allegations on what specific data was presented to Rawlinson—are not contemporaneous, particularized facts sufficient to plead falsity. *See In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *15 (N.D. Cal. Dec. 9, 2022) (FEs failed to show projected timeline false when made).

Moreover, even if an FE had alleged he presented some specific datapoint to Rawlinson, the AC fails for another independent reason: Rawlinson is not alleged to have adopted any such pessimistic views. *See* ECF 103 at 20 n.9 (FE-2 allegations insufficient "absent an allegation that Rawlinson adopted FE-2's views about the inability to meet production targets at that time" in 2022); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (plaintiff failed to plead "Musk ever accepted" employee views that "goal was impossible"); *infra* § II.A.2. Indeed, the most that FE-12 can allege is that Rawlinson "mostly listen[ed]" when he "occasionally" attended meetings. AC ¶ 320. That allegation is plainly insufficient. Nor does Rawlinson's statement from a year later, on May 8, 2023—that he was at the factory "night and day" in 2022—demonstrate contemporaneous falsity. That Rawlinson worked hard to meet a stated goal but ultimately failed is not securities fraud absent a showing that he had adopted a view that the stated goals were unreachable when the February or May 2022 statements were made. *See Talis*, 2022 WL 17551984, at *15 (CEO "notorious" for not having a scheduling buffer supported inference that CEO set aggressive timelines but not an inference that

5

statement was "false when made").

Finally, Plaintiff argues that the proximity of Defendants' August 2022 disclosure reducing guidance and discussing logistics problems supports the falsity of the May 2022 statements (ECF 123 at 19-20), but this is classic and impermissible fraud-by-hindsight pleading. *See In re Affirm Holdings, Inc. Sec. Litig.*, 2024 WL 3955453, at *14 (N.D. Cal. Aug. 26, 2024) (plaintiff cannot "speculate in hindsight" earlier statements of good financial health were inaccurate).

All told, Plaintiff again has failed to plead contemporaneous facts demonstrating that the 2022 production target statements were false when made. None of Plaintiff's allegations are remotely akin to what the Court found sufficient for Statements 1 and 2. The Court should again dismiss.

### 3. Plaintiff Fails to Plead the 2022 Production Delay Statements Were False or Misleading.

This Court previously dismissed claims relating to the 2022 Statements on the causes of production delays (6-11, 13, 16) for the "same reasons" it dismissed the claims relating to production targets: Plaintiff failed to allege "contemporaneous knowledge that the statements were false when made." ECF 103 at 20, 25.[5] Plaintiff now argues that Defendants mischaracterized the Court's prior Order because Rawlinson's statements providing reasons for production delays were misleading by omission and thus do not require a showing of "falsity." ECF 123 at 22 n.8. But these claims fail under *either* theory, as the AC again fails to allege: (1) contemporaneous facts demonstrating that Defendants' statements were false or misleading when made *or* (2) an actionable omission.

***First,*** Plaintiff again failed to allege facts showing that Rawlinson knew the production delay statements were false or misleading when made. The Opposition argues that knowledge is not required, but this Court previously held otherwise. *See* ECF 123 at 22; ECF 103 at 25. And despite this argument, Plaintiff strings together allegations to argue that Rawlinson *did* know about logistics issues, and challenges Defendants' argument that Rawlinson's mere presence at the Warehouse was insufficient to establish knowledge. ECF 123 at 20-23. These allegations miss the mark. They lack the

---

[5] The Court previously considered Plaintiff's laundry list of logistics-related allegations and found them insufficiently pled as to the 2022 Statements. *See, e.g.*, ECF No. 103 at 20 n.9. Many of Plaintiff's factual allegations on 2022 logistical issues are repled and have already been considered and rejected by the Court. *See*, *e.g.*, ECF 108-2 (complaint redline); AC ¶ 195 ("Warehouse on Wheels" program); *id.* ¶¶ 185-86 (inventory issues); *id.* ¶ 225 (scrapped parts); *id.* ¶ 295 (production line issues).

6

specificity required to show that Rawlinson *adopted* any former employee's view on the impact of logistics issues on production delays, which is what actually matters. *See Talis*, 2022 WL 17551984 at *15 (FE allegations lacked specific facts about why it was not reasonable for the defendant to expect production obstacles to improve); *infra* § II.A.2. And it is undisputed that Lucid *did* experience supply chain constraints that contributed to production delays at the time of the 2022 Statements—which is precisely what the subject statements discuss—yet Plaintiff now alleges these were false and misleading. ECF 120 at 16 (citing AC ¶¶ 265-67, 269-72, 296, 302). Ultimately, the new FE allegations in the AC do *not* show that Rawlinson *knew*, at that time of his 2022 statements, the specific impact of Lucid's internal logistics issues (distinct from supply chain constraints). As a result, his statements regarding supply chain problems do not, without further clarification, create an impression "materially different" from Lucid's actual state of affairs. ECF 103 at 21; ECF 120 at 16-17.

***Second***, Plaintiff fails to allege an actionable omission based on contemporaneous facts. Plaintiff's omissions theory mixes random allegations to argue that Rawlinson's references to supply chain constraints somehow concealed the "reality at Lucid." ECF 123 at 21. First, Plaintiff alleges Rawlinson was present for discussions of inventory issues in late 2021 and early 2022 and that overcrowding remained an issue in February 2022. *Id.* (citing AC ¶¶ 193, 240, 246, 353). None of these allegations supports a conclusion that Rawlinson did not reasonably expect these matters to improve. Second, Plaintiff alleges that the Plant (separate from the Warehouse) shut down for eight days in December 2021 and for 2-3 hours per day in 2022, but does not allege any nexus between those supposed events and Rawlinson whatsoever. *Id.* (citing AC ¶¶ 158, 295). Vague claims about Rawlinson's presence at the Warehouse are insufficient to plead falsity of the specific statements attacked—*i.e.*, that Rawlinson knew or believed internal logistics issues impacted Lucid's production delays to a degree that omission of such issues would have rendered any given 2022 statement false or misleading. ECF 120 at 16-18.

Plaintiff's omissions theory relies on vague FE allegations that "Warehouse logistics failures caused 90% of the delays," but these are insufficiently pleaded. ECF 123 at 20-21; AC ¶¶ 282, 321 (FE-8 and FE-12 allegations). These allegations reflect only vague impressions and lack specificity as to how the FEs came up with these figures. Moreover, allegations from FE-8, who left Lucid in "early

7

2022," are not specific enough in timing to challenge statements Rawlinson made in February, March, or May 2022. AC ¶ 356. And neither alleged witness—a training manager and a third-party contractor who was not even employed by Lucid—held a sufficiently senior role at Lucid that would have provided them personal knowledge of, or sufficient access to know, the impact of logistics challenges on overall vehicle production. AC ¶¶ 69, 73. Thus, *un*like in *Forescout*, where FEs alleged that management pressured them to mischaracterize specific deals, or in *Crews*, where FEs detailed specific profit losses per vehicle, here the FEs critical to Plaintiff's omissions theory neither are close enough to the alleged fraud nor make sufficiently specific allegations. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770 (9th Cir. 2023); *Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at \*10-11 (C.D. Cal. July 3, 2023). Nor is it alleged either FE shared his pessimistic views with Rawlinson, let alone that Rawlinson would have adopted them. *Supra* § I.A.2; *infra* § II.A.2.

Even if Rawlinson's factually true statements about production delays were incomplete for failing to *also* mention internal logistics issues (which they were not), they were not misleading. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("[Plaintiff] must specify the reason or reasons why [statements] were misleading or untrue, not simply why the statements were incomplete."). As in *Brody*, where the court held that a press release omitting mention of a possible takeover was *not* misleading because it did not affirmatively state or imply anything about a merger, here none of Rawlinson's statements about production delays (or their underlying causes) included any representation or implication that Lucid was free of internal logistics issues, and many even referenced those issues. *See, e.g.*, AC ¶ 412 ("This reflects the extraordinary supply chain and logistics challenges we've encountered."). Consequently, the FEs fail to allege that Rawlinson's statements were misleading because they fail to establish a basis to conclude that the reality at Lucid materially differed from what Rawlinson represented in his 2022 Statements, or that Rawlinson believed as much.

Likewise, Plaintiff's assertion about the alleged prevalence of Lucid's logistics issues does not render Rawlinson's references to industry-wide trends misleading by omission when reviewed in context. *See, e.g.*, ECF 123 at 21 (arguing Statement 9 misleadingly attributes *only* "supply chain challenges" from a "small handful of suppliers" as "*the* reason" for reduced production, when the specific statement was a direct response to an analyst question about the "visibility you have over the

8

next few months with some of the suppliers you mentioned") (citing AC ¶ 417 (emphasis added)); AC ¶ 416. Rawlinson's answer to the question, which did not reference Lucid-specific logistics, was truthful and sufficient. *See id.* ¶ 417; *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (disclosure of information required only when necessary to make "statements made, *in light of the circumstances* under which they were made, not misleading") (emphasis added).

Accordingly, Plaintiff again fails to plead facts showing the production delay statements in 2022 were false or misleading and fails to show an actionable omission. Dismissal is again warranted.

**B.    The Court Should Also Dismiss the Claims Based on Statements 3 and 4.**

Defendants demonstrated in their Motion that Statement 3 (Rawlinson's comment about "spool[ing] up" production to 34,000 units per year) expressly *acknowledged*, rather than omitted, that moving quality parts from the Warehouse to the Plant was a bottleneck. *See* ECF 120 at 18-19.[6] Plaintiff also does not dispute that Lucid contemporaneously disclosed these issues. *Id.* at 19-20.

In response, Plaintiff argues that this is a factual matter unsuitable for resolution at this stage. ECF 123 at 25 (citing *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1132 (N.D. Cal. 2020)). Plaintiff's reliance on *SEB* is misplaced. There, the court found ambiguity as to whether the speaker was addressing specifically competitors' market strategies or more generally the impact of competition, necessitating the adoption of Plaintiff's interpretation on motion to dismiss. *Id.* Here, no such ambiguity exists. Rawlinson was asked specifically about the demand for the Lucid Air and the Company's long-term output goals. AC ¶ 403. Rawlinson replied that the factory *could* scale to 34,000 units annually, contingent on getting "quality parts to the line"—*i.e.*, from the Warehouse to the Plant. *Id.* ¶ 404. Indeed, Plaintiff's own allegations support Rawlinson's statement. AC ¶¶ 289, 321 (FE-12 estimated that "90% of the time, Lucid blamed the Warehouse not getting parts to the line as the reason Lucid was missing its production targets."). As a result, Statement 3 is not misleading.

As to Statement 4, Plaintiff's argument is that Lucid was required to discuss internal logistics issues *every time* it addressed industry-wide supply chain shortages. ECF 123 at 25-26. That is not the

---

[6] Statements 3 and 4 are publicly viewable at these links: https://www.youtube.com/watch?v=v-Krc8c8ZZo (partial video containing Statement 3); https://www.cnbc.com/video/2021/11/16/watch-jim-cramers-full-interview-with-lucid-motors-ceo-peter-rawlinson.html (full video containing Statements 3 and 4). Defendants can provide the video file upon request if there are access issues.

9

law. Nor is it reasonable or practical from a business perspective. In Statement 4, while Rawlinson stated that Lucid had not faced the same semiconductor shortages as other carmakers (which Plaintiff does not challenge), he also explained that Lucid's in-house semiconductor production did not fully shield it from other industry-wide issues. AC ¶ 373. Plaintiff cites to *Miller v. Thane Int'l, Inc.*, in which the court held defendant's literally-true statements were nevertheless misleading because they implied to shareholders that approval of a merger would result in the company's shares being NASDAQ listed. ECF 123 at 26 (citing 519 F.3d 879, 886 (9th Cir. 2008)). There is no parallel. Rawlinson's statement that Lucid was partially insulated from—but not immune to—industry-wide supply chain shortages did not create a misleading impression to a reasonable investor. *See Brody*, 280 F.3d at 1006. And Rawlinson did not have a duty to discuss, unprompted, internal logistics issues when answering a specific question about a separate issue—the global semiconductor shortage. *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (duty to inform exists only when statements were "misleading in light of the context surrounding the statements"). The Court should dismiss Statements 3 and 4.

### C.    Certain 2022 Statements Are Protected Under the PSLRA's Safe Harbor.

**Forward-Looking.** Plaintiff does not contest that Statements 5, 8, 12, 14, and 15 are by their nature forward-looking. Nor does Plaintiff contest those statements, along with Statements 6, 7, 9, and 16, were identified as forward-looking in earnings calls and SEC filings. *See Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (failure to address arguments in opposition constitutes an "abandonment of those claims"). Rather, Plaintiff argues that portions of Statements 6, 7, 9, and 16 are not forward-looking because they *also* contain statements of present fact. This misconstrues the law. These Statements[7] include assumptions "underlying or relating to" future economic performance and business operations. *See* 15 U.S.C. § 78u-5(i)(1)(D). "Examined as a whole," such statements are forward-looking. *See* ECF 121-9; *In re Solarcity Corp. Sec. Litig.*, 274

---

[7] Statement 6 ("*Looking ahead*, we're updating our outlook for 2022 production to a range of 12,000 to 14,000 vehicles."); Statement 7 (Production "has been and indeed continued to be impacted by supply chain challenges . . . we have updated our 2022 production outlook for Lucid Air to a range of 12,000 to 14,000 vehicles."); Statement 9 ("[A]nd the second half of the year, we'll see a significant uptake. And our guidance is based upon that premise."); Statement 16 ("We're facing global supply chain challenges . . . and we're looking forward to hitting our 12 to 14,000 units. . . .").

F. Supp. 3d 972, 990 (N.D. Cal. 2017) ("When a statement includes both forward-looking and non-forward-looking statements," statements are still forward-looking if "when 'examined as a whole, the challenged statements relate [] to future expectations and performance.'") (citation omitted); *Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *6 (N.D. Cal. Sept. 30, 2024) (same).

**Meaningful Cautionary Language.** Contrary to Plaintiff's incorrect suggestion (ECF 123 at 23-24), the Court has never analyzed the effect of the Company's extensive, detailed, cautionary language on the claims arising from the 2022 Statements. ECF 103 at 28-29 (limiting cautionary language analysis to 2021 statements). Plaintiff has not adequately alleged that concrete risks had materialized at the time any of the 2022 Statements were made. *See supra* § I.A. Moreover, Lucid provided investors over 40 pages of specific risk factors that identified historical, current, *and* future delays. *See, e.g.*, ECF 120 at 23 ("We *have* experienced and may in the future experience significant delays in the design, manufacture, launch, and financing of the Lucid Air"). Lucid also repeatedly disclosed specific and detailed risks related to internal logistics issues. For example, concurrent with the February 2022 statements, Lucid warned of its "inability to efficiently manage *these components or to implement or maintain effective inventory management and other systems.*" *See* ECF 121-2 (FY 2021 10-K) at 5, 16-17. Crucially, Lucid observed that "as the scale of our vehicle production increases, we will need to accurately forecast, purchase, warehouse and transport components to our manufacturing facilities and servicing locations internationally and at much higher volumes. We *have not yet scaled production* in our manufacturing facilities to significant volumes." *Id*. at 17, 38 (emphasis added). In other words, Lucid specifically disclosed past and present delays, and warned of the risks of ineffective inventory management and other logistics issues at the center of the AC. *See* ECF 120 at 22-24.

The sum total of the Company's extensive disclosures is similar to, and even more "detailed and specific," than those found sufficient to trigger the safe harbor in *Wochos v. Tesla* and other precedent. *Compare* ECF 120 at 22-24 *with Wochos*, 985 F.3d at 1193 n.3 (Tesla's cautionary statements "detailed and specific" where Tesla acknowledged past experience with "significant delays" in the "design, manufacture, launch, and production ramp of new vehicles"); *see also*

*Lamontagne*, 2024 WL 4353010, at *8 (language sufficient where filings referred to "delays and complications" in developing self-driving technology).[8]

### D.    Statements 8, 9, and 12 Are Non-Actionable Puffery or Opinion.

**Statements 8, 9, and 12 Are Puffery.** Plaintiff incorrectly argues that each of the "feel-good monikers" and vague statements raised in Defendants' Motion are "capable of objective verification." ECF 123 at 26-28. Statement 8 ("indeed, we could have chosen to *build faster*") is not tied to a particular quantity from which the Company would build "faster" and is qualified by the vague conditional statement ("could have chosen") in the context of discussing product quality. *Cf. Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 137 (D. Mass. 1996) ("could be too close for comfort" was puffery). Statement 9 is also puffery. The Opposition argues that Defendants cherry-picked puffery terms and that Statement 9 also includes Lucid being "poised to ramp up production" once the supply chain improved. ECF 123 at 27. But vague growth statements like in Statement 9 ("significant uptake") are regularly found inactionable. *See, e.g.*, *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007) ("significant improvement" is non-actionable puffery); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal. 2012) (being happy with product "ramp" was puffery). Moreover, language similar to Statement 12 ("remains on track") also has been found by this Court to be inactionable puffery, even when made in relation to financial data and production timelines. *See Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at *9 (N.D. Cal. July 17, 2024) ("remain on track to achieve our 2021 financial outlook"); *Lamontagne*, 2024 WL 4353010, at *9 (statement that self-driving technology "appear[ed] to be on track" to be available by year end was "too vague" to rely on).

**Statement 9 Is An Opinion.** Plaintiff's argument that Statement 9 is actionable, despite its opinion language ("we're very optimistic . . ."), because it purportedly makes a factual assertion about ramping up production without referencing Lucid's internal logistics issues, is similarly flawed. *See* ECF 123 at 28. Plaintiff accuses Defendants of ignoring half the statement; yet that is precisely what the Opposition does. *Id.* The challenged portion of Statement 9 reads: "we're very optimistic that we

---

[8] The safe harbor also applies because, as discussed above, Plaintiff failed to allege particularized facts showing the speaker (whether Rawlinson or Lucid) had a subjective lack of belief in any of the forward-looking 2022 statements. *See supra* § I.A.; *Wochos* 985 F.3d at 1190.

will resolve, but it's going to take a few months, and the second half of the year, we'll see a significant uptake." AC ¶ 417. Read in its entirety, this is a classic statement of opinion. And Plaintiff's own caselaw confirms that an opinion is not misleading just because the "issuer knows, but fails to disclose, some fact cutting the other way." *See Forescout*, 63 F.4th at 764.

## II.   PLAINTIFF FAILS TO PLEAD SCIENTER.

### A.   Plaintiff Fails to Establish Scienter Under *Zucco.*

As fully explained in the Motion, the 2022 Statements must again be dismissed for failure to plead scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Plaintiff fails to demonstrate, as *Zucco* requires, that FEs were described with (1) sufficient particularity or (2) contemporaneous facts meeting the high bar to create a strong inference of scienter.

#### 1.   Plaintiff Fails to Plead the Reliability of Its FEs Under *Zucco*.

Plaintiff has not met *Zucco* prong 1 because the AC neither describes most of the FEs with sufficient particularity to show reliability and personal knowledge of Rawlinson's mental state nor establishes how allegations of FEs who departed well before the 2022 Statements were made could be probative of Rawlinson's mental state. *See Zucco*, 552 F.3d at 995 (plaintiff must "provid[e] sufficient detail about a confidential witness' position . . . to provide a basis for attributing the facts reported by that witness to the witness' personal knowledge").

**Inadequate Descriptions**. Plaintiff fails to address Defendants' arguments that FEs 3-12 were inadequately described. ECF 120 at 28; *Qureshi*, 2010 WL 841669, at *6 n.2. Plaintiff addresses only FE-2, whom Defendants challenged on other grounds, and states merely that "[t]he basis for the other FEs' knowledge is also adequately plead." ECF 123 at 32. This conclusory assertion ignores the inadequacies of the FE descriptions, including lack of job title (ECF 120 at 28 n.5), lack of supervisor (*id.* at 28 n.6), cursory job descriptions (*id.* at 28 n.7), and indefinite employment dates (*id.* at 27).

**Non-Contemporaneous FEs**. Plaintiff fails to explain how FEs who departed before Rawlinson made certain of the 2022 Statements can speak to his state of mind at that time. Contrary to Plaintiff's assertion (ECF 120 at 27; ECF 123 at 35), Defendants ask the Court to disregard the allegations of FEs 2, 6, and 7 for all 2022 Statements, and those of FE-9 for the May 2022 Statements, because each had departed Lucid at least a month before those statements were made. AC ¶¶ 63, 67-

13

68, 70. Plaintiff's cases also are distinguishable. For example, in *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), the CW who left before the class period was found reliable only because, as COO, he had "personal knowledge" of what information executives could access. *Id.* at 1145. Scienter requires *contemporaneous* facts that are indicative of scienter. These FEs are unable to provide such facts.

### 2.  Plaintiff Does Not Plead a Strong Inference of Scienter Under *Zucco*.

Plaintiff fails to demonstrate that it has met the high bar to show a strong inference of scienter because the AC fails to plead particularized FE allegations that speak to Rawlinson's state of mind and the Opposition further misconstrues the relevant law. *See supra* §§ I.A.2-3.

**Significant Likelihood**. First, Plaintiff sets forth a strawman legal test: that Defendants argued under *Wochos* that Plaintiff was required to demonstrate that targets were "impossible to achieve." ECF 120 at 30. As elaborated below, this is not Defendants' argument. But even under Plaintiff's cited *Forescout* "significant likelihood" test, 63 F.4th at 781, the AC lacks particularized and contemporaneous allegations showing that Rawlinson knew when the 2022 Statements were made that there was a "significant likelihood" the stated targets were not reachable. *See supra* §§ I.A.2-3.

**Adoption of Employee Views**. Because Plaintiff fails to plead facts showing that Rawlinson "adopted" or "shared" the pessimistic opinions of the FEs, those opinions do not bear on his mental state. *See* ECF 120 at 30 (citing *Wochos*, 985 F.3d at 1194). That *Wochos* did not address scienter, as Plaintiff argues, is immaterial: "falsity and scienter . . . are generally strongly inferred from the same set of facts." *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 729 (N.D. Cal. 2022); *see also* ECF 123 at 29; ECF 120 at 29-30. Here, Plaintiff concedes that Rawlinson did not adopt any FE opinion, including by alleging that Rawlinson "maintained *his own view*," without pleading any particularized facts demonstrating his contemporaneous knowledge of the false or misleading nature of the 2022 Statements.[9] ECF 123 at 29-30; *see supra* §§ I.A.2-3. That is fatal to Plaintiff's claim.

**Non-Contemporaneous Allegations**. Plaintiff has not rebutted the point that many of its key FE allegations lack temporal specificity, preventing the FEs from providing insight into scienter at

---

[9] Plaintiff has not alleged any facts remotely akin to Rawlinson's 2021 alleged adoption of an FE's viewpoint via a "head nod" for the 2022 Statements. ECF 120 at 29-30; ECF 123 at 12; *supra* § I.A.2.

specific points in time for specific statements. Many actions are alleged to have occurred "throughout [the FE's] tenure," "prior to and throughout the Class period," or "daily." *See, e.g.*, AC ¶¶ 457, 459; ECF 123 at 30-31. Such nonspecific allegations are regularly disregarded. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (plaintiffs must "allege **when** and **how**" defendant "became aware of any facts giving rise to inference of scienter"); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *17 (N.D. Cal. July 21, 2020) ("[g]eneral allegations" that defendants were "at meetings" or received "weekly or monthly reports" are insufficient to establish scienter).

**Hearsay**. Finally, the Court should not consider Plaintiff's tenuous, hearsay-based allegations. Even Plaintiff admits, *see* ECF 123 at 31, that FE hearsay is appropriately considered only when the allegations are "specific in time, context, and details," *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016), or where the FE was "in a position to be personally knowledgeable," *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 485 n.5 (9th Cir. 2019). Plaintiff's allegations do not meet this criteria. For example, FE-11 was not in the referenced 8:00 a.m. meetings and fails to allege when any specific meeting happened, what was discussed, whether Rawlinson was present, or that Rawlinson adopted any negative opinions presented at such meetings. *See supra* §§ I.A.1-3.

Accordingly, Plaintiff again fails to plead a strong inference of scienter on the 2022 Statements.

### B.    Plaintiff's Motive Allegations Do Not Support Scienter.

Plaintiff does not explain how Rawlinson benefited from the supposed fraud without selling stock during the Relevant Period.[10] *See* ECF 123 at 34. Plaintiff also fails to address the Court's prior reference to *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018), where a lack of stock sales (and additional stock purchases during class period) cut against finding scienter. ECF 103 at 34.[11]

### CONCLUSION

As set forth above and in the Motion, Statements 3-16 should be dismissed and any leave to amend should be denied.

---

[10] Defendants stand by their arguments against the core operations allegations. ECF 120 at 31.

[11] Plaintiff's Section 20(a) claim also fails as to Statements 3-16 because no primary 10(b) violation has been pled. *See Lamontagne*, 2024 WL 4353010, at *18; ECF 120 at 32.

15

Respectfully submitted,

Date: March 14, 2025                     SIDLEY AUSTIN LLP

By:*/s/ Sara B. Brody*
    Sara B. Brody (SBN 130222)
    sbrody@sidley.com
    Stephen Chang (SBN 312580)
    stephen.chang@sidley.com
    Sarah E. Gallo (SBN 335544)
    sgallo@sidley.com
    SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
    San Francisco, CA 94104
    Telephone: (415) 772-1200

    Andrew W. Stern (*pro hac vice*)
    astern@sidley.com
    James O. Heyworth (*pro hac vice*)
    jheyworth@sidley.com
    SIDLEY AUSTIN LLP
    787 Seventh Avenue
    New York, NY 10019

    *Attorneys for Defendants*

16