# EXHIBIT 32

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Shon Morgan (SBN 187736)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
shonmorgan@quinnemanuel.com

Kurt E. Wolfe (admitted *pro hac vice*)
kurtwolfe@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, DC 20004
Tel: (202) 538-8100

Ryan P. Gorman (admitted *pro hac vice*)
ryangorman@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel: (617) 712-7100

*Counsel for Defendant Peter Rawlinson*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Lucid Group, Inc. Securities Litigation | Case No. 3:22-cv-02094-AMO |
| This Document Relates to: All Actions | CLASS ACTION |
| | **DEFENDANT PETER RAWLINSON'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

objections, states that he is still investigating whether he will rely on any legal advice, legal opinions, or Communications from counsel in defending this Action. Plaintiff's request that he identify all such legal advice, opinions, or Communications from counsel—before Mr. Rawlinson determines that he intends to rely upon any such legal advice, legal opinions, or Communications from counsel—improperly seeks disclosure of legal advice, legal opinions, or Communications from counsel that are protected by the attorney-client privilege and/or attorney work product doctrines. Mr. Rawlinson will supplement his response to this Interrogatory as appropriate as discovery progresses.

**INTERROGATORY NO. 2:**

Identify every instance in which any Person told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed to You any concern or doubt about Lucid's ability to meet the 2022 Vehicle Production Guidance, First Revised 2022 Vehicle Production Guidance, or Second Revised 2022 Vehicle Production Guidance, and for each instance, state:

    (i)     the date, time, and location;

    (ii)    the method in which the information was told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed (e.g., in-person conversation, video chat, phone call, text message, email, memorandum, etc.);

    (iii)   the name of the Person(s) who told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed to You any such concern or doubt; and

    (iv)   the name of all other Persons who heard or were told, informed, or otherwise heard or read such concerns or doubts.

**RESPONSE TO INTERROGATORY NO. 2 (January 20, 2026):**

Mr. Rawlinson incorporates by reference his General Objections, Objections to Definitions, Objections to Instructions, and Objection to "Relevant Time Period" as if fully set forth herein.

Mr. Rawlinson further objects to this Interrogatory as improperly compound and containing multiple unrelated, separate, and distinct subparts that constitute distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a)(1). *See generally Adobe Sys. v. Wowza Media Sys.*, 2012 U.S. Dist. LEXIS 103988 (N.D. Cal. July 25, 2012). For each "instance" of communication, this Interrogatory requires four separate pieces of information: (1) date, time, and location; (2) method of communication;

(3) identity of the communicator; and (4) identity of all other persons who heard or received the communication. If Mr. Rawlinson were to identify even ten such "instances," this single Interrogatory would require forty separate factual responses.

Mr. Rawlinson further objects to this Interrogatory as impermissibly vague, ambiguous, and lacking any ascertainable meaning. The Interrogatory fails to define critical terms, rendering it impossible for Mr. Rawlinson to provide a meaningful response. The terms "concern or doubt" are undefined and inherently subjective. It is unclear whether this seeks communications expressing definitive concerns, speculative questions, hypothetical scenarios, passing comments, or any statement that could be construed as less than absolute certainty. Reasonable people could differ on whether a particular statement constitutes a "concern" or "doubt" versus a discussion of risks, contingencies, or alternative scenarios. The phrase "told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed" is redundant and creates ambiguity about what communications are responsive. It is unclear whether this encompasses informal conversations, brainstorming sessions, questions posed for discussion purposes, devil's advocate positions, or only formal presentations of definitive concerns. The term "ability to meet" is vague. It is unclear whether this seeks communications about Lucid's ultimate ability to achieve production targets, temporary obstacles that were subsequently overcome, concerns about meeting targets absent certain contingencies, or discussions of various scenarios and their likelihood. Mr. Rawlinson cannot be expected to guess at Plaintiff's intended meaning or make subjective judgments about what activities or level of involvement satisfy these terms. This fundamental ambiguity renders the Interrogatory unanswerable as written.

Mr. Rawlinson further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case in violation of Federal Rule of Civil Procedure 26(b)(1). As drafted, this Interrogatory seeks information about "every instance" of any communication that could be characterized as expressing "concern or doubt" about production guidance over a multi-year period involving three separate guidance figures. This would require Mr. Rawlinson to recall and document countless conversations, meetings, emails, and other communications with potentially hundreds of individuals at all levels of the organization. The burden of identifying every such communication, determining the date, time, and location of each, recalling the method of communication, and identifying

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

every person who may have been present or copied on such communications is enormous and disproportionate to the needs of the case. Many such communications would be routine operational discussions, preliminary conversations, or brainstorming sessions that were not material to ultimate decision-making regarding production guidance. Furthermore, the Interrogatory does not identify a reasonable or specific time period.

Mr. Rawlinson further objects to this Interrogatory as it seeks information that is not reasonably available or accessible. Mr. Rawlinson cannot be expected to recall with precision the date, time, location, method, and attendees of every conversation over a multi-year period in which any person expressed any level of concern about production targets. Requiring such exhaustive detail imposes an impossible burden.

Mr. Rawlinson further objects to this Interrogatory as it improperly requires him to act as an investigator for Plaintiff and to create a comprehensive compilation or narrative that does not exist in any discrete form. This Interrogatory does not seek existing facts or documents; rather, it demands that Mr. Rawlinson synthesize, organize, and catalogue potentially hundreds of communications across multiple years into a formatted compilation for Plaintiff's benefit. Courts routinely reject interrogatories that require parties to perform such extensive investigative work on behalf of the opposing party.

Mr. Rawlinson further objects to this Interrogatory as it assumes facts not in evidence and calls for speculation and inherently subjective interpretations. The Interrogatory presumes, without factual basis, that persons expressed "concerns or doubts" to Mr. Rawlinson about Lucid's ability to meet production guidance, thereby assuming the truth of Plaintiff's allegations, which Mr. Rawlinson disputes. Moreover, even if such communications occurred, the Interrogatory requires Mr. Rawlinson to retrospectively characterize whether particular communications—which may have involved nuanced operational discussions, risk assessments, contingency planning, or scenario analysis—constituted actionable "concerns or doubts" about "ability to meet" production guidance. Whether a particular statement rises to the level of a "concern" or "doubt," as opposed to routine business planning, risk management, or discussion of variables and contingencies, is inherently subjective and cannot be answered with the precision this Interrogatory demands. Mr. Rawlinson cannot speculate about how Plaintiff would characterize ambiguous communications or apply undefined standards to his recollection of conversations.

Mr. Rawlinson further objects to this Interrogatory as seeking information equally available to

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

Plaintiff through less burdensome means. Many of the communications sought by this Interrogatory are documented in emails, meeting notes, presentations, and other materials that are being or will be produced in discovery. Mr. Rawlinson can review those documents and pursue targeted follow-up through depositions, which is a far more efficient method of developing this information than requiring Mr. Rawlinson to exhaustively catalog every conversation he may have had over multiple years.

Mr. Rawlinson further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

Mr. Rawlinson further objects to this Interrogatory to the extent it seeks information outside of his possession, custody, or control.

Mr. Rawlinson further objects to this Interrogatory on the grounds that it is unreasonably duplicative and cumulative and seeks information that may be obtained from other sources and through other means of discovery that are more convenient, more efficient, more practical, less burdensome, or less expensive, including information disclosed in Lucid's document productions.

Subject to and without waiving any of the foregoing objections, Mr. Rawlinson is willing to meet and confer with Lead Plaintiff concerning the scope of this Interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (March 13, 2026):**

Mr. Rawlinson incorporates by reference his General Objections, Objections to Definitions, Objections to Instructions, Objection to "Relevant Time Period," and Specific Objections to Interrogatory No. 2 as if fully set forth herein. As explained in those objections, this Interrogatory is facially overbroad, unduly burdensome, and disproportionate to the needs of this case, at least because it seeks information about "every instance" of any communication that could be subjectively characterized as expressing "concern or doubt" about production guidance over a multi-year period involving three separate guidance figures. On January 27, Mr. Rawlinson sought to confer in good faith with Plaintiff regarding the scope of this Interrogatory. *See* Gorman Feb. 4, 2026 Email. Plaintiff generally refused, instead demanding that Mr. Rawlinson "provide full answers to the extent not objectionable," before Plaintiff would discuss whether the parties could reach agreement on a narrower, appropriate scope. Hoey Feb. 12, 2026 Ltr. This is improper. *See, e.g.*, *Sanchez Ritchie v. Energy*, 2015 WL 12914435, at *2 (S.D. Cal. Mar. 30, 2015) (denying motion to compel where requesting party stands on an overly broad request and does not

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

make a reasonable attempt to narrow it or to explain the need for such a broad range of documents and/or information," noting that a responding party need not provide a partial response "when inadequate guidance exists to determine the proper scope of the" discovery request).  Not every instance in which any person might have "told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed" any "concern or doubt" to Mr. Rawlinson about Lucid's ability to meet the 2022 Vehicle Production Guidance, First Revised 2022 Vehicle Production Guidance, or Second Revised 2022 Vehicle Production Guidance is relevant to this case.  As the Court has already made clear, the key issue in this case is whether Mr. Rawlinson "adopted [other employees'] views about the [purported] inability to meet production targets" at the time of the alleged misstatements.  *See* Dkt. 103 at 20 n.9.  Plaintiff's repeated attempts to expand discovery in this case to encompass (irrelevant) opinions that other Lucid employees may have held regarding Lucid's production processes and capabilities are overbroad and improper.  Mr. Rawlinson further objects to this Interrogatory as facially overbroad because it asks Mr. Rawlinson to identify instances in which any person expressed "concern or doubt" regarding Lucid's ability to achieve its 2022 production targets *after* the alleged misstatements at issue.  This Interrogatory also seeks information that is no longer in Mr. Rawlinson's possession, custody, or control, such as information that would require review of Mr. Rawlinson's contemporaneous communications at the time that were exchanged over his Lucid email.  Mr. Rawlinson's good-faith attempt to provide Plaintiff with additional information responsive to this Interrogatory, despite Plaintiff's refusal to provide adequate guidance to determine the proper scope of this request, shall not be construed as an admission that discovery into any identified individuals or communications is relevant or proportional to the needs of this case.

Without waiving his objections, and in the interest of compromise, Mr. Rawlinson responds as follows: During 2021, Mr. Rawlinson attended meetings with Lucid employees regarding production of the Lucid Air and production volume targets.  While some middle-management employees periodically expressed frustration about operational challenges, Mr. Rawlinson does not recall anyone telling him Lucid could not produce 20,000 vehicles in 2022 or that the target needed to be revised downward.  Where employees raised near-term production concerns, Mr. Rawlinson considered those concerns and the

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

mitigation steps being taken.  No such concerns altered his conviction in November 2021 that the 20,000-vehicle production target remained achievable.

Mr. Rawlinson recalls one informal conversation, approximately one week before the November 15, 2021 earnings call, in which Nicolas Minbiole asked whether Lucid was on pace to produce 20,000 vehicles in 2022.  Mr. Minbiole did not state that the target was unachievable or needed revision; he was seeking confirmation that it remained achievable.  In response, Mr. Rawlinson sought to allay Mr. Minbiole's concerns.  That conversation did not alter Mr. Rawlinson's conviction.

Mr. Rawlinson is aware that Plaintiff alleges an unidentified former employee told him in September 2021 that Lucid "would never meet its production goals" and that he reacted by nodding.  Mr. Rawlinson does not recall anyone telling him in September 2021 that the 20,000-vehicle target was unachievable or needed revision, nor does he recall nodding in response to or otherwise affirming any such statement.  Mr. Rawlinson is similarly aware of Plaintiff's allegation that he attended a meeting in October or early November 2021 in which he stated Lucid would produce fewer than 10,000 vehicles in 2022 and instructed attendees to keep that information in their "belt loop."  Mr. Rawlinson does not recall making any such statement.

Mr. Rawlinson reserves all rights and waives none.

**INTERROGATORY NO. 3:**

Identify every instance in which any Person told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed to You any concern that Lucid's Internal Logistics limited, constricted, restrained, impaired, hampered, hindered, delayed, or otherwise negatively impacted Lucid's ability to produce Air vehicles, and for each instance, state:

(i)  the date, time, and location;

(ii)  the method in which the information was told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed (e.g., in-person conversation, video chat, phone call, text message, email, memorandum, etc.);

(iii)    the name of the Person(s) who told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed to You such information; and

(iv)    the name of all other Persons who heard or were told, informed, or otherwise heard or read such information.

**RESPONSE TO INTERROGATORY NO. 3 (January 20, 2026):**

Mr. Rawlinson incorporates by reference his General Objections, Objections to Definitions, Objections to Instructions, and Objection to "Relevant Time Period" as if fully set forth herein.

Mr. Rawlinson further objects to this Interrogatory as improperly compound and containing multiple unrelated, separate, and distinct subparts that constitute distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a)(1). *See generally Adobe Sys. v. Wowza Media Sys.*, 2012 U.S. Dist. LEXIS 103988 (N.D. Cal. July 25, 2012). For each "instance" of communication, this Interrogatory requires four separate pieces of information: (1) date, time, and location; (2) method of communication; (3) identity of the communicator; and (4) identity of all other persons who heard or received the communication. Given the extraordinarily broad scope of "Internal Logistics" and the vague standard for what constitutes a "concern" about any negative impact, this could require hundreds or thousands of separate factual responses.

Mr. Rawlinson further objects to this Interrogatory as impermissibly vague, ambiguous, and lacking any ascertainable meaning. The Interrogatory fails to define critical terms, rendering it impossible for Mr. Rawlinson to provide a meaningful response. The term "Internal Logistics" is defined in Plaintiff's definitions to encompass an extraordinarily broad range of activities, including "offloading inventory," "managing and storing inventory," "reordering inventory," "reflashing inventory," "scrapping inventory," "performing quality checks," and "locating inventory" and "transporting it to the plant." This definition is so expansive that virtually any operational discussion about manufacturing processes, inventory management, warehousing, quality control, or production sequencing could fall within its scope. The breadth of this definition makes it impossible for Mr. Rawlinson to reasonably identify which communications are responsive. The terms "limited, constricted, restrained, impaired, hampered, hindered, delayed, or otherwise negatively impacted" are vague, overlapping, redundant, and subjective. It is unclear whether this seeks communications about temporary delays that were immediately resolved,

minor inefficiencies that did not materially affect overall production, isolated incidents versus systemic issues, or theoretical concerns about potential impacts. The phrase "otherwise negatively impacted" is a catch-all that provides no meaningful boundary. The phrase "told, informed, stated, raised, expressed, suggested, indicated, communicated, or otherwise relayed" is redundant and creates ambiguity about what communications are responsive. It is unclear whether this encompasses informal observations, brainstorming about process improvements, questions posed for discussion, or only formal presentations of definitive concerns. The term "concern" is undefined and subjective. It is unclear whether this requires that the communicator subjectively felt "concern" or whether any factual statement about internal logistics operations suffices if Plaintiff characterizes it as a "concern." Mr. Rawlinson cannot be expected to guess at Plaintiff's intended meaning or make subjective judgments about what activities or level of involvement satisfy these terms. This fundamental ambiguity renders the Interrogatory unanswerable as written.

Mr. Rawlinson further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case in violation of Federal Rule of Civil Procedure 26(b)(1). As drafted, this Interrogatory seeks information about "every instance" of any communication regarding any aspect of internal logistics that could be characterized as having any negative impact on production. Given that "Internal Logistics" encompasses virtually all warehouse and inventory management operations— activities that occur continuously in any manufacturing operation—this would require Mr. Rawlinson to recall and document countless operational discussions, status updates, emails, and conversations over multiple years. The burden of identifying every such communication, determining the date, time, and location of each, recalling the method of communication, and identifying every person who may have been present or copied is enormous and disproportionate to the needs of the case, particularly where routine operational challenges are a normal part of any manufacturing ramp-up.

Mr. Rawlinson further objects to this Interrogatory as it improperly requires him to act as an investigator for Plaintiff and to create a comprehensive compilation or narrative that does not exist in any discrete form. This Interrogatory does not seek existing facts or documents; rather, it demands that Mr. Rawlinson synthesize, organize, and catalogue what could be thousands of operational discussions and communications across multiple years—discussions that occur continuously in any manufacturing environment—into a formatted compilation for Plaintiff's benefit. Given that "Internal Logistics"

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

encompasses virtually all warehouse and inventory management operations that occur daily in manufacturing, this would require Mr. Rawlinson to create an exhaustive log of routine operational communications that no company maintains. Courts routinely reject interrogatories that require parties to perform such extensive investigative work on behalf of the opposing party rather than producing the underlying documents through which the requesting party can conduct its own analysis.

Mr. Rawlinson further objects to this Interrogatory as it assumes facts not in evidence and calls for speculation and inherently subjective interpretations. The Interrogatory presumes, without factual basis, that persons expressed "concerns" to Mr. Rawlinson that Internal Logistics "negatively impacted" production, thereby assuming the truth of Plaintiff's allegations, which Mr. Rawlinson disputes. Moreover, even if such communications occurred, the Interrogatory requires Mr. Rawlinson to retrospectively characterize whether particular communications—which may have involved routine operational updates, problem-solving discussions, process improvement initiatives, or normal manufacturing troubleshooting—constituted actionable "concerns" that "negatively impacted" production. In any manufacturing ramp-up, logistics discussions occur continuously as part of normal operations; whether a particular operational discussion rises to the level of a "concern" about negative impact, as opposed to routine manufacturing management, is inherently subjective and cannot be answered with the precision this Interrogatory demands. Mr. Rawlinson cannot speculate about how Plaintiff would characterize routine operational communications or apply undefined standards to continuous manufacturing discussions.

Mr. Rawlinson further objects to this Interrogatory as it seeks information that is not reasonably available or accessible. Mr. Rawlinson cannot be expected to recall with precision the date, time, location, method, and attendees of every conversation over a multi-year period in which any aspect of internal logistics operations was discussed. Moreover, in a manufacturing environment, discussions about logistics, inventory management, and production processes occur daily if not hourly. Requiring exhaustive documentation of all such communications imposes an impossible burden.

Mr. Rawlinson further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

Mr. Rawlinson further objects to this Interrogatory to the extent it seeks information outside of his

-15-    Case No. 3:22-cv-02094-AMO

possession, custody, or control.

Mr. Rawlinson further objects to this Interrogatory on the grounds that it is unreasonably duplicative and cumulative and seeks information that may be obtained from other sources and through other means of discovery that are more convenient, more efficient, more practical, less burdensome, or less expensive, including information disclosed in Lucid's document productions.

Subject to and without waiving any of the foregoing objections, Mr. Rawlinson is willing to meet and confer with Lead Plaintiff concerning the scope of this Interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3 (March 13, 2026):**

Mr. Rawlinson incorporates by reference his General Objections, Objections to Definitions, Objections to Instructions, Objection to "Relevant Time Period," and Specific Objections to Interrogatory No. 3 as if fully set forth herein. As explained in those objections, this Interrogatory is facially overbroad, unduly burdensome, and disproportionate to the needs of this case, at least because it asks Mr. Rawlinson to identify "every instance" in which any person communicated any subjective "concern" that Lucid's "Internal Logistics"—a defined term so expansive it encompasses virtually all warehouse and inventory management operations—"negatively impacted" Lucid's ability to produce Air vehicles, without any limitation on the significance or nature of the communication or the severity or scope of logistics issue in question. On January 27, 2026, Mr. Rawlinson sought to confer in good faith with Plaintiff regarding the scope of this Interrogatory. *See* Gorman Feb. 4, 2026 Email.  Plaintiff generally refused, instead demanding that Mr. Rawlinson provide full answers to the extent not objectionable before Plaintiff would discuss whether the parties could reach agreement on a narrower, appropriate scope.  Hoey Feb. 12, 2026 Ltr. This is improper. *See, e.g., Sanchez Ritchie v. Energy*, 2015 WL 12914435, at *2 (S.D. Cal. Mar. 30, 2015). As the Court has already made clear, the key issue in this case is whether Mr. Rawlinson "adopted [other employees'] views about the [purported] inability to meet production targets" at the time of the alleged misstatements.  *See* Dkt. 103 at 20 n.9.  Plaintiff's repeated attempts to expand discovery in this case to encompass (irrelevant) opinions that other Lucid employees may have held regarding Lucid's production processes and capabilities are overbroad and improper.  Mr. Rawlinson further objects to this Interrogatory as facially overbroad because it asks Mr. Rawlinson to identify "every instance" in which any person communicated any "concern" that Lucid's "Internal Logistics… negatively impacted Lucid's

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

ability to produce Air vehicles" *after* the alleged misstatements at issue. This Interrogatory also seeks information that is no longer in Mr. Rawlinson's possession, custody, or control, such as information that would require review of Mr. Rawlinson's contemporaneous communications at the time that were exchanged over his Lucid email. Mr. Rawlinson's good-faith attempt to provide Plaintiff with additional information responsive to this Interrogatory, despite Plaintiff's refusal to provide adequate guidance to determine the proper scope of this request, shall not be construed as an admission that any identified communication constitutes a relevant "concern" about a "negative impact" on production or is otherwise relevant or proportional to the needs of this case.

Without waiving his objections, and in the interest of compromise, Mr. Rawlinson responds as follows: Throughout 2021, Mr. Rawlinson attended meetings with Lucid employees to discuss progress toward starting and ramping production of the Lucid Air. While employees discussed various day-to-day operational issues, supply-chain constraints—particularly securing sufficient quality parts from suppliers—were generally understood to represent the most significant threat to production capacity during this period.

In or around late September 2021, following the departure of Lucid's Senior Director of Global Logistics & Procurement, Peter Hochholdinger expressed concern to Mr. Rawlinson that Mr. Hochholdinger was not the right person to oversee logistics. Mr. Hochholdinger did not tell Mr. Rawlinson that the 20,000-vehicle target was unachievable, and that conversation did not alter Mr. Rawlinson's conviction in Lucid's ability to meet the guidance.

Beginning in early October 2021 through November 15, 2021, Mr. Rawlinson attended meetings more frequently at Lucid's Logistics Operations Center in Tempe, Arizona. He does not recall any employee stating that logistics issues would prevent Lucid from producing 20,000 vehicles in 2022. To the contrary, as operational challenges were identified during that period, Mr. Rawlinson believed they were remediable and that Lucid employees were actively addressing them. Nothing he observed during those meetings undermined his conviction in November 2021 that the 20,000-vehicle target remained achievable.

Mr. Rawlinson reserves all rights and waives none.

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 4:**

Identify every instance where You received or reviewed a forecast, budget, estimate, or projection—created by a Lucid employee, contractor, consultant, or agent—projecting that Lucid would produce fewer than 20,000 Air vehicles in 2022, and for each instance, state:

(i)    the date, time, and location that you received or reviewed such forecast, budget, estimate, or projection;

(ii)   the name of the forecast, budget, estimate, or projection; and

(iii)  the method, forum, or medium through which you received or viewed such forecast, budget, estimate, or projection.

**RESPONSE TO INTERROGATORY NO. 4 (January 20, 2026):**

Mr. Rawlinson incorporates by reference his General Objections, Objections to Definitions, Objections to Instructions, and Objection to "Relevant Time Period" as if fully set forth herein.

Mr. Rawlinson further objects to this Interrogatory as improperly compound and containing multiple unrelated, separate, and distinct subparts that constitute distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a)(1). *See generally Adobe Sys. v. Wowza Media Sys.*, 2012 U.S. Dist. LEXIS 103988 (N.D. Cal. July 25, 2012). For each "instance" where Mr. Rawlinson received or reviewed a forecast, this Interrogatory requires three separate pieces of information: (1) date, time, and location; (2) name of the document; and (3) method, forum, or medium of receipt. If Mr. Rawlinson were to identify dozens of such documents or presentations, this single Interrogatory would require hundreds of separate factual responses.

Mr. Rawlinson further objects to this Interrogatory as impermissibly vague, ambiguous, and lacking any ascertainable meaning. The Interrogatory fails to define critical terms, rendering it impossible for Mr. Rawlinson to provide a meaningful response. The terms "forecast, budget, estimate, or projection" are undefined and could encompass a virtually unlimited range of materials, from formal financial forecasts and Board-approved budgets to informal back-of-the-envelope calculations, preliminary working assumptions, scenario analyses, draft models, oral estimates provided in meetings, and any other statement about potential production levels. It is unclear what level of formality, reliability, or authority is required for a document or communication to constitute a responsive "forecast, budget, estimate, or

projection." The phrase "received or reviewed" is ambiguous. It is unclear whether this encompasses documents Mr. Rawlinson briefly glanced at, documents presented to him but not necessarily endorsed or relied upon, documents he received but did not read, preliminary drafts that were subsequently revised, or only final versions of forecasts that were formally adopted. The Interrogatory provides no guidance on what level of engagement constitutes "receiving" or "reviewing." This Interrogatory does not specify whether it seeks only formal, final forecasts or also includes preliminary versions, drafts, working models, superseded projections, scenario analyses (best case/worst case/most likely), sensitivity analyses, or contingency planning documents. Without such clarification, Mr. Rawlinson cannot determine the scope of responsive materials. The term "created by a Lucid employee, contractor, consultant, or agent" is overbroad and vague. It is unclear whether this includes preliminary work by junior analysts that was never presented to senior management, unsolicited projections by external consultants that were not commissioned or adopted by Lucid, or informal estimates by contractors working on discrete projects. Mr. Rawlinson cannot be expected to guess at Plaintiff's intended meaning or make subjective judgments about what activities or level of involvement satisfy these terms. This fundamental ambiguity renders the Interrogatory unanswerable as written.

Mr. Rawlinson further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case in violation of Federal Rule of Civil Procedure 26(b)(1). As drafted, this Interrogatory seeks information about "every instance" where Mr. Rawlinson received or reviewed any document that could be characterized as a forecast, budget, estimate, or projection showing production below 20,000 units. In a dynamic manufacturing environment during a production ramp-up, forecasts, estimates, and projections are continuously updated and revised based on evolving information about supply chain, production capacity, customer demand, and numerous other factors. Requiring Mr. Rawlinson to identify every instance where he viewed, received, or was presented with such materials—including preliminary drafts, working models, scenario analyses, and superseded projections—and to recall the specific date, time, location, and method of receipt for each such instance over a multi-year period imposes an enormous and disproportionate burden.

Mr. Rawlinson further objects to this Interrogatory as it seeks information that is not reasonably available or accessible. Mr. Rawlinson cannot be expected to recall with precision the date, time, location,

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

and method through which he received or reviewed every forecast, budget, estimate, or projection over a multi-year period. Mr. Rawlinson regularly received operational updates, production reports, financial forecasts, and other business information through multiple channels—including emails, presentations at Board meetings and executive meetings, dashboards, informal conversations, and numerous other means.

Mr. Rawlinson further objects to this Interrogatory as it improperly requires him to act as an investigator for Plaintiff and to create a comprehensive reconstruction of his document review history that does not exist in any form. This Interrogatory does not seek existing facts or documents; rather, it demands that Mr. Rawlinson reconstruct and catalogue every instance over multiple years in which he viewed, received, or was presented with documents falling within certain categories, including the specific date, time, location, and method of receipt for each such instance. No executive maintains such a granular log of their document review activities. Requiring Mr. Rawlinson to reconstruct this history from memory—particularly where the underlying documents themselves will be or have been produced in discovery and speak for themselves—improperly shifts Plaintiff's investigative burden onto Mr. Rawlinson and requires him to create a compilation that does not exist.

Mr. Rawlinson further objects to this Interrogatory as it assumes facts not in evidence. The Interrogatory presumes, without factual basis, that forecasts, budgets, estimates, or projections existed projecting that Lucid would produce fewer than 20,000 Air vehicles in 2022, and further presumes that Mr. Rawlinson received or reviewed such materials. This assumes the truth of Plaintiff's allegations, which Mr. Rawlinson disputes. The Interrogatory should be reframed to ask "if any" such materials existed and were reviewed, rather than presuming their existence and demanding identification of "every instance" of review.

Mr. Rawlinson further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

Mr. Rawlinson further objects to this Interrogatory to the extent it seeks information outside of his possession, custody, or control.

Mr. Rawlinson further objects to this Interrogatory on the grounds that it is unreasonably duplicative and cumulative and seeks information that may be obtained from other sources and through other means of discovery that are more convenient, more efficient, more practical, less burdensome, or

less expensive, including information disclosed in Lucid's document productions.

Subject to and without waiving any of the foregoing objections, Mr. Rawlinson is willing to meet and confer with Lead Plaintiff concerning the scope of this Interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (March 13, 2026):**

Mr. Rawlinson incorporates by reference his General Objections, Objections to Definitions, Objections to Instructions, Objection to "Relevant Time Period," and Specific Objections to Interrogatory No. 4 as if fully set forth herein. As explained in those objections, this Interrogatory is facially overbroad, unduly burdensome, and disproportionate to the needs of this case, at least because it asks Mr. Rawlinson to identify "every instance" in which he received or reviewed any "forecast, budget, estimate, or projection"—undefined terms sweeping enough to encompass anything from formal board-approved financial models to informal back-of-the-envelope calculations—projecting that Lucid would produce fewer than 20,000 Air vehicles in 2022. On January 27, 2026, Mr. Rawlinson sought to confer in good faith with Plaintiff regarding the scope of this Interrogatory. *See* Gorman Feb. 4, 2026 Email. Plaintiff generally refused, instead demanding that Mr. Rawlinson provide full answers to the extent not objectionable before Plaintiff would discuss whether the parties could reach agreement on a narrower, appropriate scope. Hoey Feb. 12, 2026 Ltr. This is improper. *See, e.g., Sanchez Ritchie v. Energy*, 2015 WL 12914435, at *2 (S.D. Cal. Mar. 30, 2015). As the Court has already made clear, the key issue in this case is whether Mr. Rawlinson "adopted [other employees'] views about the [purported] inability to meet production targets" at the time of the alleged misstatements. *See* Dkt. 103 at 20 n.9. Plaintiff's repeated attempts to expand discovery in this case to encompass (irrelevant) opinions that other Lucid employees may have held regarding Lucid's production processes and capabilities are overbroad and improper. Mr. Rawlinson further objects to this Interrogatory as facially overbroad because it asks Mr. Rawlinson to identify "every instance" in which he received or reviewed any "forecast, budget, estimate, or projection…projecting that Lucid would produce fewer than 20,000 Air vehicles in 2022" *after* the alleged misstatements at issue, and *after* Lucid revised the 20,000-vehicle target downward in February 2022.

This Interrogatory also seeks information that is no longer in Mr. Rawlinson's possession, custody, or control, such as information that would require review of Mr. Rawlinson's contemporaneous communications at the time that were exchanged over his Lucid email. Mr. Rawlinson's good-faith attempt to provide Plaintiff with additional information responsive to this Interrogatory, despite Plaintiff's refusal to provide adequate guidance to determine the proper scope of this request, shall not be construed as an admission that any identified document constitutes an actionable "forecast, budget, estimate, or projection" or is otherwise relevant or proportional to the needs of this case.

Without waiving his objections, and in the interest of compromise, Mr. Rawlinson responds as follows: Mr. Rawlinson does not recall receiving or reviewing any forecast, budget, estimate, or projection—formal or informal—projecting that Lucid would produce fewer than 20,000 Air vehicles in 2022 prior to his November 15–16, 2021 statements. The operational updates and production reports he periodically received during that period were primarily short-term in nature, focusing on near-term daily and weekly production figures, and may have taken the form of ramp-up curves or build plans. To the extent any such materials discussed 2022 volume projections, Mr. Rawlinson recalls them indicating that Lucid would produce at least 20,000 vehicles in 2022.

Mr. Rawlinson reserves all rights and waives none.

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

DATED: March 13, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Kurt E. Wolfe*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (SBN 187736)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
shonmorgan@quinnemanuel.com

Kurt E. Wolfe (admitted *pro hac vice*)
kurtwolfe@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8100

Ryan P. Gorman (admitted *pro hac vice*)
ryangorman@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel: (617) 712-7100

*Counsel for Defendant Lucid Group, Inc.*

Case No. 3:22-cv-02094-AMO
PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 13, 2026, a copy of **DEFENDANT PETER RAWLINSON'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** was served via electronic mail to counsel for Lead Plaintiff.

DATED: March 13, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Ryan P. Gorman*
Ryan P. Gorman

**<u>VERIFICATION</u>**

I, Peter Rawlinson, declare:

I am authorized to make this verification for and on behalf of Defendant Peter Rawlinson. I have reviewed the document titled "**DEFENDANT PETER RAWLINSON'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**." I hereby acknowledge that, based on my personal knowledge and to the best of my recollection, the facts stated in the Responses are true and correct.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___12___ day of March, 2026 in Eversham, England, United Kingdom.

*P D Rawlinson*
P D Rawlinson (Mar 12, 2026 03:05:07 PDT)

Peter Rawlinson

Case No. 3:22-cv-02094-AMO

PETER RAWLINSON'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES